**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
BARBARA SMALL, individually and on behalf of all
others similarly situated.

                         Plaintiff,

             - against -

SHAPIRO DICARO & BARAK LLC, NEWPENN
FINANCIAL LLC d/b/a SHELLPOINT
MORTGAGE SERVICING, THE BANK OF NEW
YORK MELLON f/k/a THE BANK OF NEW
YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS CWABS, INC., ASSET-
BACKED CERTIFICATEHOLDERS, SERIES
2006-24,

                     Defendants.
-----------------------------------------------------------------X

Case No.: 1:25-cv-01834-MKB-SDE

**PLAINTIFF BARBARA SMALL'S MEMORANDUM OF LAW IN OPPOSITION TO
ALL DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

    Cases ...................................................................................**Error! Bookmark not defined.**

    Statutes...............................................................................**Error! Bookmark not defined.**

    Rules ...................................................................................**Error! Bookmark not defined.**

    Secondary Authorities.........................................................**Error! Bookmark not defined.**

preliminary statemenT ................................................................................................................ 1

legal argument............................................................................................................................. 2

    I.    the *rooker-feldman* doctrine does not bar this action................................................. 2

        A.    The second "Prong" in the *Rooker-Feldman* Doctrine is not met ............................. 3

        B.    The third "prong" in the *Rooker-Feldman* Doctrine is not met .................................. 7

    II.    the doctrines of res judicata, claim preclusion, and judicial estoppel do not bar this action  8

        A.    Res Judicata/Claim Preclusion................................................................................ 8

        B.    Collateral Estoppel................................................................................................ 12

        C.    Judicial Estoppel .................................................................................................. 13

    III.    Plaintiff's claims are timely ........................................................................................ 14

        A.    Plaintiff's Judiciary Law § 487 claim must have accrued on or after February 13, 2021 and are thus timely ............................................................................................. 14

        B.    Plaintiff's remaining claims are timely under Equitable Tolling and Fraudulent Concealment Theories ............................................................................................... 15

    IV.    all of plaintiff's claims have been sufficiently pled so as to survive defendants' motion to dismiss pursuant to fed. r. civ. 12(b)(6) ....................................................................... 19

        A.    Plaintiff has sufficiently pled facts to support a claim under the Fair Debt Collection Practices Act ............................................................................................................. 20

        B.    Plaintiff has sufficiently pled facts to support a claim under General Business Law § 349 ........................................................................................................................... 21

        C.    Plaintiff has sufficiently pled facts to support a claim under Judiciary Law § 487 .. 21

            i.    Plaintiffs' Damages under Judiciary Law § 487 and their Legal Malpractice Claims are distinct ............................................................................................................... 22

        D.    Plaintiff has sufficiently pled facts to support a Civil RICO claim against all Defendants ................................................................................................................ 23

            i.    The First Amended Complaint adequately establishes predicate acts with the requisite particularity ............................................................................................... 23

            ii.    Plaintiffs have pleaded the instances of mail and wire fraud with the requisite particularity ............................................................................................................... 25

iii.    Plaintiff has alleged an Association-in-Fact Enterprise ................................... 26

E.    Plaintiff has sufficiently pled facts to support her Tort claims ................................ 28

i.    Negligence and Gross Negligence ................................ 28

ii.    Legal Malpractice ................................ 29

iii.    Unjust Enrichment ................................ 30

iv.    Prima Facie Tort ................................ 31

v.    Conversion ................................ 31

conclusion ................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Recovery Tr. v. HBC Bank, USA*, 634 F.3d 678 (2d Cir. 2011) ................................... 20

*Adamou v. Cty. Of Spotsylvania, Va.*, No. 12-cv-7789 (ALC), 2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) . 26

*Babb v. Capitalsource Inc.*, 588 F. App'x 66 (2d Cir. 2015) ....................................................... 14

*Barlow v. Nationstar Mortgage LLC*, No. 21-1483, 2022 WL 950949 (2d Cir. Mar. 30, 2022) ............ 12

*Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173 (2020) ........................................... …….29

*Blagrove v. Deutsche Bank Nat'l Trust Co.*, 19-CV-5357 (RPK) (LB), 2021 WL 1601115 (E.D.N.Y. Apr. 23, 2021) ........................................................................................ 13

*Boyle v. United States*, 556 U.S. 939 (2009) ........................................................... 34, 35

*Brake v. Slochowsky & Slochowsky, LLP*, 504 F.Supp.3d 103 (E.D.N.Y. 2020) ................. 10, 14

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (N.Y. 1983) ..................... 38

*Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272 (E.D.N.Y. 2024) ................................ 28

*Carrol v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716 (N.D.N.Y. Nov. 30, 2020) ..................................................................................................................... 31

*Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) ................................................... 16

*Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV–99 (VB), 2017 WL 6757224 (S.D.N.Y. 2017) ……………………………………………………………………………….......... 18

*Coble v. Cohen & Slamowitz, LLP*, 824 F.Supp.2d 568 (S.D.N.Y. 2011) ................................. 23

*Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006) ................................... 39

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) .......................................................... 10, 14

*Estate of Schneider v. Finmann*, 15 N.Y.3d 306 (2010) ................................................ 35

*Evans v. Ottimo*, 469 F.3d 278 (2d Cir. 2006) ................................................................... 19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ......................................... 9

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ...................... 34

*Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK)(MMH), 2023 WL 2707098 (E.D.N.Y. Mar. 30, 2023) ............................................................................................... 14

*Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719 (S.D.N.Y. Mar. 21, 2017) ................................................................................................................. 13

*Gabriele v. American Home Mortg Servicing. Inc.*, 503 Fed. Appx. 89 (2d Cir. 2012) .. 10, 14, 19

*Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511 (N.Y. 2012) ........................................... 37

*Gorbatov v. Tsirelman*, 155 A.D.3d 836 (N.Y. App. Div. 2d Dep't 2017) .......................... 29, 36

*Hansen v. Miller*, 52 F.4th 96 (2d Cir. 2022) ...................................... 14, 16, 19, 29, 35

*Harper v. Ercole*, 648 F.3d 132 (2d Cir. 2011) ...................................................... 22

*Harris v. BNC Mortgage, Inc.*, 737 Fed.Appx. 573 (2d Cir. 2018) ...................................... 17, 18

*Haziz-Ramadhan*, 2023 WL 8003339 ...................................................................... 18

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) .................................. 9, 10

*Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263 (S.D.N.Y. 2018) ..................... 21

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014) ...................................................................................................... 37

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616 (2d Cir. 2012) ...................................... 20

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) .................................................................. 30

*L–Tec Elecs. Corp. v. Cougar Elec. Org.*, 198 F.3d 85 (2d Cir. 1999) .................................. 18

*Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710 (E.D.N.Y. Sept. 28, 2021) .............. 14

*Lindow v. Argent Mortg. Co., LLC*, No. 23-CV-8860 (AMD) (JAM), 2024 WL 4665181 (E.D.N.Y. Nov. 4, 2024) ...................................................................................... 9, 14

*Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010) ................................................... 25

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) ................................................................................................... 14, 17, 23

*Miller v. Schloss*, 218 N.Y. 400 (N.Y. 1916) ......................................................... 37

iv

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................... 32

*Nesbeth v. New York City Mgmt. LLC*, No. 17 CIV. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ……………………………………………………………………………… 26

*New Horizons Invs., Inc. v. Marine Midland Bank, N.A.*, 248 A.D.2d 449 (2d Dep't 1998) ....... 18

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) .......................................... 22

*NLRB v. United States Technologies Corp.*, 706 F.2d 1254 (2d Cir. 1983) .............................. 17

*NYC Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dep't 2000) ................... 29, 38

*Orix Credit All. v. Phillips-Mahnen, Inc.*, No. 89 CIV. 8376, 1993 WL 183766 (S.D.N.Y. May 26, 1993) ...................................................................................................................... 39

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (N.Y. 1995) .................................................................................................................................... 28

*Plumitallo v. Hudson Atlantic Land Co.*, 74 A.D.3d 1038 (N.Y. App. Div. 2d Dep't 2010) .................................................................................................................................... 37

*Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689 (S.D.N.Y. 2014) ........................... 16

*Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211 (E.D.N.Y. 2023) ..................... 27

*Saint-Jean v. Emigrant Mortgage Company*, 129 F.4th 124 (2d Cir. 2025) ........................... 22

*Schiro v. Farley*, 510 U.S. 222 (1994) ....................................................... 19

*Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454 (S.D.N.Y. 2009) ......................... 27

*Somin v. Total Community Management Corp.*, 494 F.Supp.2d 153 (E.D.N.Y. 2007) .................... 23

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ......................... 32

*State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) ....................... 18, 24

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ....................................... 13

*Sykes v. Mel Harris and Associates*, 757 F.Supp.2d 413 (S.D.N.Y. 2010) ........................... 23

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) ........................ 34

*Sykes v. Mel S. Harris and Associates, LLC*, 780 F.3d 70 (2d Cir. 2015) ........................ 13, 14

v

*Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016) ........................................................ 14, 18, 19, 24

*Valentine Transit, Inc. v. Kernizan*, 191 A.D.2d 159 (1st Dep't 1993) ............................ 39

*Vossbrink v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014) ...................... 12, 14

*Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20 (2d Cir. 2016) ..................... 12, 14

**Statutes**

15 U.S.C. § 1692e .......................................................................... 27

18 U.S.C. § 1962 .......................................................................... 31

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................. 26

**Secondary Authorities**

State of New York Office of the State Comptroller, Division of State Government Accountability, Reporting on Foreclosure of Real Property Funds – Kings County [2013-S-2, December 12, 2013] ......................................................... 10

Plaintiff Barbara Small, individually and on behalf of all others similarly situated (hereinafter "Plaintiff"), submits this memorandum of law in opposition to the motions to dismiss filed by: (1) Defendants NewPenn Financial LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificateholders, Series 2006-24, ("BONYM") and (2) Defendant LOGS Legal Groups f/k/a Shapiro DiCaro & Barak LLC ("Shapiro") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants now urge this Court to ignore the record of their own filings, disregard the statutory text of CPLR §§ 5001–5003, and accept their miscalculations as lawful merely because they were rubber-stamped in foreclosure proceedings. They ask the Court to substitute legal fictions—res judicata, collateral estoppel, Rooker–Feldman, and time-bar defenses—for the reality that the foreclosure process was deliberately manipulated to extract inflated judgments and to suppress surplus proceeds owed to homeowners and the public.

This case does not seek to relitigate a foreclosure. It seeks accountability for a coordinated scheme. The instant complaint alleges that BONYM, through its servicer Shellpoint and foreclosure counsel Shapiro, systematically inflated foreclosure judgments by charging unlawful compound interest during the "motion determination window"—the period between a referee's computation and the entry of judgment. The effect was to transform a lawful claim on principal into an inflated award that enriched the bank and its counsel at the expense of homeowners, creditors, and government agencies.

1

Defendants' motions to dismiss insist that these claims are barred by prior judgments or abstention doctrines. But such defenses fail because the complaint does not attack the validity of a foreclosure judgment; it exposes independent misconduct in the preparation and submission of false documents that courts relied on in entering those judgments.

What Defendants seek is judicial amnesty for a scheme hiding in plain sight—a scheme designed not merely to recover what was owed, but to manufacture debt, depress surplus, and conceal the theft of hundreds of thousands of dollars in homeowner equity. To grant their motions would be to affirm the very abuse the New York Legislature sought to curb through the Foreclosure Abuse Prevention Act, and to deny the evidence of our own eyes and ears.

For these reasons, and those set forth more fully below, Defendants' motions to dismiss should be denied in their entirety.

## LEGAL ARGUMENT

## I.    THE *ROOKER-FELDMAN* DOCTRINE DOES NOT BAR THIS ACTION

Defendants are incorrect that this action is barred by the *Rooker-Feldman* doctrine because Plaintiff asserts claims that are wholly independent of the underlying Small Judgment of Foreclosure and Sale ("JFS") and does not seek to overturn it.

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments…" *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). "[A]s the Supreme Court has cautioned, the doctrine is narrowly 'confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lindow v. Argent Mortg. Co., LLC*, No. 23-CV-8860 (AMD) (JAM), 2024 WL

4665181 at *4 (E.D.N.Y. Nov. 4, 2024) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

*Rooker-Feldman* is only applicable where all four of the following prongs are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Brake v. Slochowsky & Slochowsky, LLP*, 504 F.Supp.3d 103, 110 (E.D.N.Y. 2020); *see also Hoblock*, 422 F.3d at 84 (2d Cir. 2005). Here, the second and third prongs are not met and, thus, the doctrine does not apply.

## A. The second "Prong" in the *Rooker-Feldman* Doctrine is not met

The second *Rooker-Feldman* prong is not met because there is no causal link between the JFS and Plaintiff's injury. This prong is only met when the conduct complained of is actually produced by a state court judgment rather than merely ratified by the court. *See Hoblock*, 422 F.3d at 88 (finding that the second *Rooker-Feldman* prong bars a federal suit only when it "complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it"); *see also Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("*Rooker-Feldman* does not bar claims based on an opponent's misconduct that precedes the state court proceeding if the 'plaintiff's alleged injuries were merely ratified by the state court judgments rather than caused by them'") (citation omitted); *Gabriele v. American Home Mortg Servicing. Inc*., 503 Fed. Appx. 89, 92 (2d Cir. 2012) (summary order) (*Rooker-Feldman* does not bar a plaintiff's claims when "[t]he alleged litigation

misconduct was not the product of the state court's" decision, but was simply ratified, acquiesced in, or left unpunished by the state court judgment) (quoting *Hoblock*, 422 F.3d at 88).

Here, Defendants alone computed interest using unlawful methods after the entry of the JFS and the sale of the foreclosed property. See First Amended Complaint ("Am. Compl.") ¶¶ 62-69. They then submitted these unlawfully inflated interest calculations to the Referee, who used them to calculate surplus proceeds in the Report of Sale, and then uploaded the Referee's Report of Sale including the fraudulent interest calculations to the court docket. *See* Am. Compl. ¶¶ 13-14. This all occurred during the post-auction stage of the litigation, when there is little to no judicial oversight and the Referee's Report of Sale is subsequently ratified by the Court.[1]

In turn, Plaintiff complains of injuries caused by Defendants' fraudulent calculations of interest in the final stages of foreclosure proceedings—not the underlying JFS. Defendants unilaterally produced, submitted to the Referee, and filed to the court docket such fraudulent interest calculations, which were then were ratified by the court without any contemporaneous judicial review. As such, the underlying JFS, while a facilitating factor, did not produce fraudulent interest calculations—they were only produced by Defendant's own conduct. *See* Am. Compl. ¶¶ 62-69. This precludes the applicability of the second *Rooker-Feldman* prong.

The lack of a causal link between the JFS and Plaintiff's injury is further exposed by the relief Plaintiff seeks, which would not invalidate the JFS if granted. When assessing whether a plaintiff's injury was caused by a state foreclosure court judgment, the Second Circuit has consistently examined whether Plaintiff seeks relief that would nullify such a judgment. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (plaintiff's

---

[1] This lack of judicial oversight in the post-auction stage of foreclosure proceeds is well-documented. *See, e.g.,* State of New York Office of the State Comptroller, Division of State Government Accountability, Reporting on Foreclosure of Real Property Funds – Kings County [2013-S-2, December 12, 2013] (finding frequent inaccuracies in referees' reports of sale).

request that the court grant him title to his property constitutes impermissible claim of an injury caused by a state foreclosure judgment, while request for money damages does not "because the district court can determine damages liability without reviewing the propriety of the state court judgment"); *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order) (*Rooker-Feldman* bars federal court's review of plaintiff's request that the court nullify state foreclosure judgment, but not review of a claim for damages on account of defendant's fraudulent conduct in obtaining foreclosure judgment); *Barlow v. Nationstar Mortgage LLC*, No. 21-1483, 2022 WL 950949, at *2 (2d Cir. Mar. 30, 2022) (*Rooker-Feldman* bars federal court's review of plaintiff's request for an injunction against foreclosure activity and an accounting of his loan payments, both of which would require reversing the underlying foreclosure judgment itself).

Here, Plaintiff does not seek relief that challenges the foreclosure judgment. Plaintiff merely seeks, *inter alia*, "a judgment declaring that Defendants have committed the violations of law alleged in this action, prospective injunctive relief enjoining and directing Defendants to comply' with applicable law, and damages for the injuries inflicted by Defendants' fraud. Am. Compl. at 40. Nowhere in the Amended Complaint does Plaintiff seek a judgment overturning, invalidating, or vacating the underlying state court judgments. In this way, the instant case is easily distinguishable from cases cited by Defendants wherein the *Rooker-Feldman* doctrine applied because the plaintiffs sought to overturn state foreclosure judgments. *See Blagrove v. Deutsche Bank Nat'l Trust Co.*, 19-CV-5357 (RPK) (LB), 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (dismissing the plaintiff's attempt to overturn state court's foreclosure judgment); *see also Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, at *4-7 (S.D.N.Y. Mar. 21, 2017) (denying the plaintiff's motion to vacate the foreclosure judgment). Because Plaintiff's

requests here only seek to remedy injuries caused by Defendants' fraud and do not seek to interfere with the JFS, the second *Rooker-Feldman* prong is wholly inapplicable.

The instant case is far more analogous to *Sykes v. Mel S. Harris and Associates, LLC*, 780 F.3d 70 (2d Cir. 2015). In *Sykes*, the plaintiffs alleged that defendants engaged in fraudulent conduct in state foreclosure proceedings, including submitting fraudulent documents to state courts to obtain default judgment. *Id.* at 75. The Second Circuit "concluded that the case was not barred by *Rooker-Feldman*, specifically considering whether the state-court judgments caused plaintiffs' injuries, and noting that 'claims sounding under the FDCPA, RICO, and state law [including GBL § 349 and Judiciary Law § 487] speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.'" *Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) (discussing and quoting *Sykes*, F.3d at 94-95).

Here, too, all of Plaintiff's claims speak not to propriety of the underlying JFS, but to Defendants' fraudulent conduct in the post-auction, post-judgment phase of the foreclosure proceedings. Defendants thus fundamentally mischaracterize Plaintiff's claims when they argue that Plaintiff is seeking to have this Court review and reject the JFS. Plaintiff, rather, challenges Defendants' fraudulent computation of unlawfully inflated interest amounts, which they alone computed, and which they submitted to the Referee and uploaded to the court *after* the entry JFS and the sale of the Subject Property. Am. Compl. ¶¶ 62-69. As such, this Court's review of Plaintiff's claims would not affect the underlying JFS.

Therefore, because the second *Rooker-Feldman* requirement is not met, Defendant's motion to dismiss on this ground should be denied.

**B.  The third "prong" in the *Rooker-Feldman* Doctrine is not met**

The third *Rooker-Feldman* prong also does not apply because Plaintiff's claims do not invite this Court's review and rejection of the underlying foreclosure judgment. This Court can thus consider Plaintiff's claims without assessing the validity of the JFS.

Crucially, the Second Circuit has repeatedly clarified that *Rooker-Feldman* "generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding, because the adjudication of such claims would 'not require the federal court to sit in review in of the state court judgment.'" *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (quoting *Vossbrinck*, 773 F.3d at 427 (2d Cir. 2014)); *see also Dorce*, 2 F.4th at 104. Specifically, *Rooker-Feldman* does not apply to claims "for fraud in the procurement of the state court foreclosure judgment" because they "can be considered independently of the merits of that foreclosure judgment" *Id.*; *see also Sykes*, F.3d at 94-95 ("[C]laims sounding under the FDCPA ... speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments."); *Brake*, 504 F. Supp. 3d at 110 (Plaintiff's "FDCPA claims cannot be barred on *Rooker-Feldman* grounds" because "Plaintiff is not inviting the district court to review and reject an adverse state court judgment," but rather "seeks to hold defendants accountable for the course of conduct in pursuing those actions).

This jurisprudence ensures that "the second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021); *accord Babb v. Capitalsource Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015); *see, e.g.*, *Hansen*, 52 F.4th at 100; *Sykes*, F.3d at 94-95; *Worthy-Pugh*, 664 F.App'x at 21; *Vossbrinck*, 773 F.3d at 427; *Gabriele*, 502 Fed.Appx. at 92; *Lindow*, 2024 WL 4665181, at *6;

*Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK)(MMH), 2023 WL 2707098, at *6

(E.D.N.Y. Mar. 30, 2023); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d

668, 687-88 (S.D.N.Y. 2019); *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098

(GBD), 2016 WL 4473016, at *1 (S.D.N.Y. Aug. 22, 2016).

Here, Plaintiff's claims against Defendants for their fraudulent submission of unlawful

interest calculations in the post-auction phase of foreclosure proceedings can be considered

independently of the merits of the JFS. At issue here is not whether the state courts properly

determined that the underlying defendants were entitled to a JFS. Rather, Plaintiffs seek to hold

Defendants accountable for their fraudulent conduct during the underlying proceedings, which

deprived Plaintiffs and other interested parties of surplus foreclosure proceeds. The second and

third *Rooker-Feldman* prongs thus do not apply.

Therefore, because the requirements of *Rooker-Feldman* are not met, Defendants' motion

to dismiss on this ground should be denied.

## II.     THE DOCTRINES OF RES JUDICATA, CLAIM PRECLUSION, AND JUDICIAL ESTOPPEL DO NOT BAR THIS ACTION

### A.     Res Judicata/Claim Preclusion

Defendants are incorrect in their argument that the doctrine of res judicata, or claim

preclusion, bars the instant action because (1) Plaintiff's claims do not arise out of the same facts

that determined the underlying foreclosure judgments, and/or (2) Defendants lack privity with

the underlying foreclosure defendants

Res judicata thus bars litigation of a claim when an earlier decision was (1) a final

judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same

parties or their privies, and (4) involving the same cause of action. *Cho v. Blackberry Ltd.*, 991

F.3d 155, 168 (2d Cir. 2021). *See also Hansen*, 52 F.4th at 100-01.

Defendants are unable to meet the third and/or fourth prongs.

First, Defendants Shapiro and Shellpoint are not in privity with BONYM, the plaintiff in the underlying action. In this context, privity requires "a cognizable personal interest in the subject of the state foreclosure action"; merely representing them as their attorneys or servicers is not enough. *Hansen*, 52 F.4th at 101. The subject of the underlying foreclosure action is the mortgage principal. Defendants Shapiro and Shellpoint were not the mortgagees personally entitled to the mortgage principal. They thus lack a personal interest in the subject of the underlying foreclosure action. As such, they are unable to establish privity with the underlying foreclosure defendant.

Further, the Second Circuit explicitly rejected the argument that that an attorney-client relationship, without a personal interest in the mortgage, is sufficient to establish in *Hansen*. *Id.* In so doing, the Court distinguished *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689 (S.D.N.Y. 2014)— where "the attorneys each had a personal interest in the subject of the earlier action." *Hansen,* 52 F.4th at 101. Here, the Shapiro attorneys are unable to show such a personal interest.

Therefore, because Defendants Shapiro and Shellpoint lack a personal interest in the underlying foreclosure action, they cannot meet the third res judicata prong.

Second, the instant case and the underlying foreclosure actions involve completely different causes of action. "In evaluating whether litigation 'involve[es] the same cause of action,' courts consider 'whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" *Michelo*, 419 F.Supp.3d at 688-89 (quoting *NLRB v. United States Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). For example, a

federal action and state foreclosure action are premised upon the same cause of action when they both "involve[d] allegations relating to the origin of [the] mortgage and its subsequent assignment." *Harris v. BNC Mortgage, Inc.* 737 Fed.Appx. 573, 576 (2d Cir. 2018). The decisive question, then, is whether "the claims are based on the same set of facts." *Id.*

Here, the claims set forth in the Amended Complaint are unquestionably based on different facts than those set forth in the underlying foreclosure action. The facts relevant to the instant causes of action (*e.g.*, whether Defendants submitted fraudulently inflated interest amounts after the entry of the underlying JFS part of an ongoing scheme to deprive homeowners and creditors of surplus foreclosure proceeds) arose independently of the facts relevant to the underlying foreclosure case (*e.g.*, whether Plaintiff borrowed money from lenders and failed to pay it back). The instant case does not concern the origins and assignment of the mortgage. It does, however, concern Defendants' submission of fraudulent interest calculations during the post-action stage of foreclosure litigation. Because the factual groupings on which the instant actions and the underlying foreclosure actions respectively rely are so different, the fourth res judicata prong is inapplicable. *See, e.g.*, *Toohey v. Portfolio Recovery Associates, LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *5 (S.D.N.Y. 2016) (res judicata did not apply where plaintiff's claims concerned whether defendants filed false, misleading, or deceptive affidavits in underlying debt-collection suit in scheme to defraud putative debtors); *Michelo*, 419 F.Supp3d at 690 (res judicata did not apply where plaintiff's claims concerned defendants' fraudulent scheme of filing false and deceptive documents in underlying debt collection proceedings); *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV–99 (VB), 2017 WL 6757224, at *4 (S.D.N.Y. 2017) (plaintiff's cause of action asserting deceptive filings in underlying debt collection case not barred by res judicata).

To argue the contrary, Defendants again rely on the errant notion that Plaintiff seeks to overturn the underlying foreclosure judgment. As explained, *supra*, the state court did not produce inflated interest figures using unlawful methods and submit them to the Referee. Defendants did. Plaintiff thus does not at all challenge the validity of the state court's JFS. This renders irrelevant the case law on which Defendants rely for this issue, which are all distinguishable on the basis that their respective plaintiffs outright sought to challenge the validity of underlying mortgages or foreclosure judgments. *See, e.g., Haziz-Ramadhan*, 2023 WL 8003339, at *2 ("In her Complaint, Plaintiff brings a litany of challenges against the legitimacy of the Mortgage, the transfers of the Mortgage, and the state court foreclosure proceedings"); *see also Harris*, 737 Fed.Appx. at 576 ("Both the Complaint and the Foreclosure Action involved allegations relating to the origin of the Harris's mortgage and its subsequent assignment"); *New Horizons Invs., Inc. v. Marine Midland Bank, N.A.*, 248 A.D.2d 449, 450 (2d Dep't 1998) ("[t]he issues raised by Plaintiffs in the instant case concern the parties' rights and obligations under the mortgage agreement and could have been raised as equitable defenses in the foreclosure action"). This case is not at all related to facts that would determine the JFS, such as the legitimacy of the mortgage. As such, this case is premised on causes of action entirely different from those raised in the underlying state court action.

Third, Defendant's fraudulent conduct bars the application of res judicata to the instant action. Res judicata does not apply when defendants engaged in fraudulent concealment in previous litigation. *See L–Tec Elecs. Corp. v. Cougar Elec. Org.*, 198 F.3d 85, 88 (2d Cir.1999). As discussed more fully, *infra*, Defendants engaged in inherently self-concealing fraud by filing illegal interest calculations in state court while purporting them to be lawful. This is sufficient to constitute fraudulent concealment under New York law. *See State of N.Y. v. Hendrickson Bros.,*

*Inc.*, 840 F.2d 1065, 1083 (2nd Cir. 1988). Therefore, Defendant's fraudulent concealment renders res judicata inapplicable.

Therefore, because the requirements for res judicata are not met, Defendants' motion to dismiss on this ground should be denied.

### B.  Collateral Estoppel

Defendants are also incorrect in their argument that collateral estoppel, or issue preclusion, bars the instant action because Plaintiffs are not challenging an issue of fact determined by the underlying foreclosure actions.

Collateral estoppel holds that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994). Relitigation of an issue of fact is barred "when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from litigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). Here, collateral estoppel plainly does not apply because (1) the instant action and the underlying foreclosure actions concern vastly different issues of fact, and (2) Plaintiffs did not have a full and fair opportunity to litigate the issues at hand with Defendants.

First, the merits of Plaintiff's claims do not depend on the facts that decided the underlying foreclosure action. In this context, collateral estoppel applies only if Plaintiff's claims concern facts relevant to the JFS, such as the validity of the mortgage, Plaintiff's default on the mortgage loan, the balances due to the underlying defendants. *See Hansen*, 52 F.4th at 102 (finding collateral estoppel did not bar the plaintiff's Judiciary Law § 487 claims because they "do not depend entirely on a finding that the [underlying mortgage] was invalid"). Here, in

contrast, Plaintiff's claims concern whether Defendants fraudulently inflated the interest using unlawful methods and submitted them to the Referee after the JFS had already been entered and a foreclosure sale already took place; this has nothing to do with the facts relevant to the JFS. *See, e.g.*, *Gabriele*, 503 Fed.Appx. at 93 (holding that neither *res judicata* or collateral estoppel barred plaintiff's claims based on defendants' conduct during the course of foreclosure litigation); *Toohey*, 2016 WL 4473016, at *5 (finding plaintiff's claims based on Defendant's fraudulent filings in underlying debt collection action independent of the facts relevant to that action). Therefore, Defendants fail to meet their burden of showing that Plaintiff's claims were identical to and necessarily decided by the underlying action.

Second, the self-concealing nature of Defendants' fraudulent scheme, described more fully *infra Section III(B)*, deprived Plaintiffs of the opportunity to fully and fairly litigate the issues at hand. What is more, Defendants SPS and Eckert, as mortgage servicers and attorneys, were not parties to the underlying actions. Even if Plaintiffs could have challenged Defendants' fraudulent submissions, which they could not have, it is more prudent to prosecute Defendants in a different suit that specifically addresses the fraud and a venue appropriate for federal claims, rather than using the state foreclosure proceeding to resolve a wholly new case.

Therefore, because the requirements of collateral estoppel are not met, Defendants' motion to dismiss on this ground should be denied.

### C. Judicial Estoppel

Defendant's judicial estoppel argument lacks merit because Plaintiffs have not taken inconsistent positions in successive proceedings. ECF No. 47 at 13-14. Judicial estoppel is designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Adelphia Recovery Tr. v. HBC*

*Bank, USA*, 634 F.3d 678, 696 (2d Cir. 2011). Courts typically apply judicial estoppel when: "(1) a party takes a new position that is 'clearly inconsistent' with a prior position; (2) the prior position was adopted by the court in an earlier proceeding; and (3) the new position would cause unfair advantage or detriment." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012).

Plaintiff has not taken any position in this action that is inconsistent with their conduct in the foreclosure proceeding. Plaintiff's decision not to contest the foreclosure (which was based on her mortgage default) is entirely consistent with her present claims challenging Defendant's fraudulent interest calculations designed to steal surplus funds. Accepting the validity of a foreclosure judgment based on mortgage default does not preclude challenging the fraudulent methods used to inflate the judgment amount beyond what was legally proper. *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 278 (S.D.N.Y. 2018).  These are separate and distinct issues that involve no inconsistency.

Defendant cannot point to any specific position taken by Plaintiff in the foreclosure proceeding that was adopted by the court and is now inconsistent with their present claims. Plaintiff's mere acquiescence to the foreclosure (based on her acknowledged default) does not constitute adoption of any position regarding the propriety of Defendant's interest calculation methods.

## III.  PLAINTIFF'S CLAIMS ARE TIMELY

### A.  Plaintiff's Judiciary Law § 487 claim must have accrued on or after February 13, 2021 and are thus timely

Importantly, Plaintiff's respective claims accrued upon the filing of the Reports of Sale in the underlying foreclosure action against Plaintiff.

14

Plaintiff's respective claims accrued upon the filing of the Small Report of Sale in the Athill Foreclosure Action. Since the fraudulent interest calculations were not finalized until the filing of the Small Report of Sale, the actions giving rise to Plaintiff's injury only arose when the Small Report of Sale was filed.

Defendants, however, erroneously contend that Plaintiffs' claims accrued when Defendants moved for JFSs in the underlying foreclosure actions. This contention betrays a fundamental misunderstanding of Plaintiff's claims. The fraudulent interest calculations and the ultimate misappropriation of sale proceeds did not occur when Defendants moved for a JFS. This would be nonsensical, as interest continues to accrue even after the court signs and enters the JFS, until a mortgage principal is satisfied either via a sale of the secured property or by other means. It is not until the Referee's Report of Sale that the final interest amounts are calculated. In turn, Plaintiff's injury only occurred once those fraudulent interest calculations were filed and relied upon for disbursing surplus proceeds.

As discussed, *supra*, Plaintiff's claims under every cause of action began accruing the date the Small Report of Sale was filed on February 13, 2021. *See* First Amended Complaint ¶ 63. Plaintiff filed her initial complaint in this action on April 3, 2025. *See* ECF Dkt. No. 1. This complaint was filed well within any the applicable statutes of limitations for Judiciary Law § 487, which is six years. Therefore, this claim is timely.

**B. Plaintiff's remaining claims are timely under Equitable Tolling and Fraudulent Concealment Theories**

For the remainder of Plaintiff's claims, the instant action is still timely under the doctrines of fraudulent concealment and equitable tolling.

The Second Circuit has held that fraudulent concealment equitably tolls statutes of limitations when a plaintiff shows that (1) the defendant concealed from the plaintiff the

15

existence of the cause of action; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period, and (3) the plaintiff's ignorance of the claim did not result from a lack of diligence. *Saint-Jean v. Emigrant Mortgage Company*, 129 F.4th 124, 143 (2d Cir. 2025) (*citing New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). A plaintiff may meet the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or that the wrong itself was of such a nature as to be self-concealing. *Id.* Additionally, "[t]his standard calls for reasonable diligence, not maximum feasible diligence, which a [plaintiff] may satisfy by showing that he acted as diligently as reasonably could have been expected under the circumstances." *Harper v. Ercole*, 648 F.3d 132, 138-39 (2d Cir. 2011).

Indeed, the Eastern and Southern District Courts have determined that the fraudulent concealment doctrine and equitable tolling doctrine can apply to claims arising under the FDCPA and GBL § 349. *See Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 419 F.Supp.3d 668, 697-700 (S.D.N.Y. 2019) (applying equitable tolling to certain plaintiffs' FDCPA claims and GBL § 349); *Coble v. Cohen & Slamowitz, LLP*, 824 F.Supp.2d 568, 571-572 (S.D.N.Y. 2011) (holding that equitable tolling applies to plaintiffs' FDCPA claims); *Sykes v. Mel Harris and Associates*, 757 F.Supp.2d 413, 422 (S.D.N.Y. 2010) (holding that equitable tolling applies to plaintiffs' FDCPA claims); *Somin v. Total Community Management Corp.*, 494 F.Supp.2d 153, 158 (E.D.N.Y. 2007) ("As with any a statute of limitations, the FDCPA is subject to equitable tolling in appropriate circumstances") (citations omitted).

The doctrine applies to Plaintiff's claims here. As detailed in the Complaint, Defendants engaged in a fraudulent scheme to inflate interest calculations in foreclosure judgments, depriving homeowners and creditors of surplus funds. To that end, Defendants improperly

16

applied note rate interest to the full proposed judgment amount from the date of the Referee's Report of Amounts Due, resulting in artificially inflated interest. *See* Am. Compl. ¶¶ 62-69. This fraudulent miscalculation is not visible to the plaintiff-borrower, the court, nor subordinate lienholders at the time the JFS is granted; rather, it only becomes discoverable until after the foreclosure auction has occurred and Defendants file the Report of Sale. *See Id.*

Because Defendants exercise control over the preparation and filing of the Reports of Sale, there is no contemporaneous judicial or adversarial review of the interest calculations before they are used for determining the existence and distribution of surplus proceeds. This delayed disclosure thus functions as a post-hoc concealment tool; by the time the inflated interest figure is disclosed in the Report of Sale, the property has already been sold, the surplus (if any) has already been suppressed, and downstream claimants, including Plaintiff, are left unaware that Defendants engineered an inflated judgment—in other words, the damage is already done.

The Southern District has specified further, finding a plaintiff's FDCPA claim to be equitably tolled when the defendant debt-buying company and its attorneys filed false affidavits and documents to court wherein the affiant claimed to have personally reviewed underlying documentation to support their claim was inherently self-concealing. *Toohey v. Portfolio Recovery Associates, LLC*, No. 15-cv-8098-GBD, 2016 WL 4473016 at *6 (S.D.N.Y. August 22, 2016). Similar to *Toohey*, Plaintiff had no reason to suspect the fraud at an earlier point in time, as Defendants continually passed off these kinds of fraudulent inflations of interest as legitimate in state courts which is inherently self-concealing. *See State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2nd Cir. 1988) ("The passing off of a sham article as one that is genuine is an inherently self-concealing fraud…") (citations omitted). Further, Defendants' fraud thus went completely unchecked, existing under the guise of legitimacy, until Plaintiffs first discovered it

17

when consulting with her attorney in March 2025. Thereafter, Plaintiff promptly filed the instant action. *See* ECF Dkt. No. 1. Finally, Plaintiff's continuing ignorance is not attributable to a lack of diligence. The Small Report of Sale was filed by Shapiro and contains an affidavit from the court-appointed Referee Jefferey Dinowitz, Esq.. affirming that "the above report of sale signed by him/her is in all respect true and correct, and said report and statement annexed thereto contain a true, accurate and complete report of the deposition of the proceeds of such sale." Plaintiff, when faced with the Report of Sale and this annexed statement, had no reason to question the truthfulness of its content. *See Toohey*, 2016 WL 4473016 at *7 ("Defendants' allegedly false, deceptive and misleading affidavit of merit was inherently self-concealing. Toohey had no reason to question the truthfulness of the affidavit of merit…"). Despite Defendants' numerous arguments to the contrary, any lack of diligence on Plaintiff's part was due to Defendants' own fraudulent scheme.

As the Supreme Court recognized, equitable tolling is "needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010) (emphasis in original).

Since Plaintiff filed her suit within one year of their discovery of their claims and were prevented from discovering their claims by Defendants' self-concealing fraud, this Court should find that Plaintiff's claims are timely filed. Therefore, Defendants' motion to dismiss on this ground should be denied.

**IV.  ALL OF PLAINTIFF'S CLAIMS HAVE BEEN SUFFICIENTLY PLED SO AS TO SURVIVE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(B)(6)**

As a preliminary matter, NewRez and New York Mellon have failed to establish, as a matter of law, that Plaintiff's First Amended Complaint is dismissible as an impermissible group pleading. In fact, these defendants omit a key distinction made in *Adamou v. Cty. Of Spotsylvania, Va.*, No. 12-cv-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016). In *Adamou*, the Southern District did find that the plaintiff's complaint contained "several instances of impermissible 'group pleading.'" *Id.* However, the Court did clarify that such pleadings were "buttressed by specific allegations…" which made the complaint sufficient at the motion to dismiss stage. *Id.* Similarly here, Plaintiff has supplanted her complaint with many specific, particularized allegations which have already been discussed at length in this memorandum of law. Since Plaintiff's complaint is made up of many allegations outlining the specific miscalculations complained of, it is sufficient to survive a motion to dismiss at this stage. Finally, Plaintiff's complaint is distinguishable from *Nesbeth v. New York City Mgmt. LLC*, No. 17 CIV. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019). In *Nesbeth*, the plaintiff named twenty-one defendants and alleged that each defendant was liable under each of plaintiff's sixteen causes of action. *Id.* at *3. Here, Plaintiff not only has alleged how each Defendant participates in the fraudulent scheme, but has also distinguished which Defendants are liable for each cause of action. As such, Plaintiff has sufficiently apprised Defendants of which claims she is bringing against each of them.

Further, Defendants devote considerable effort to challenging the sufficiency of Plaintiff's individual causes of action, arguing that most fail to state claims upon which relief can be granted. Yet these arguments consistently misapprehend the nature of Plaintiff's allegations — this is not a case about litigation tactics or technical disputes, but rather systematic fraud

perpetrated through calculated deception in judicial proceedings. When properly understood, each claim satisfies all required elements.

### A. Plaintiff has sufficiently pled facts to support a claim under the Fair Debt Collection Practices Act

While Defendants suggest Plaintiff has not identified specific FDCPA violations, the Complaint details a pattern of false representations regarding amounts due that squarely violates the statute's prohibitions.

The FDCPA broadly prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition extends to foreclosure proceedings and post-judgment collection activities. *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (finding FDCPA violation where law firm made false representations in foreclosure proceeding). Moreover, each discrete communication that creates a false impression constitutes a separate violation, starting its own limitations period. *Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 218-19 (E.D.N.Y. 2023).

The Complaint alleges systematic submission of false calculations inflating interest charges through deceptive mathematical manipulations. Amended Complaint ¶¶ 62-69. These were not mere errors but deliberate misrepresentations embedded within routine court filings to avoid detection. Such conduct falls directly within § 1692e's prohibition on false representations in debt collection. The systematic nature, replicated across numerous foreclosure actions, demonstrates precisely the pattern of violations the FDCPA was enacted to prevent.

### B.  Plaintiff has sufficiently pled facts to support a claim under General Business Law § 349

Defendants' contention that foreclosure practices cannot be "consumer-oriented" under GBL § 349, has been repeatedly rejected by courts recognizing that systematic mortgage-related misconduct affects consumers broadly.

GBL § 349 requires: (1) consumer-oriented conduct; (2) materially misleading acts or practices; and (3) resulting injury. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y. 1995). The consumer-orientation element looks beyond individual transactions to conduct potentially affecting "consumers at large." *Id.* Federal courts applying New York law have specifically found that standardized, lawful foreclosure practices targeting multiple homeowners satisfy this requirement. *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 283 (E.D.N.Y. 2024) (mortgage servicing practices systematically affecting borrowers constitute consumer-oriented conduct).

Here, the alleged scheme employed standardized fraudulent calculation methods across dozens if not hundreds of foreclosures. *See* Am. Compl. ¶¶ 71, 131. This was not an isolated dispute but a systematic practice with broad impact on New York homeowners. The material deception, disguising inflated interest within facially proper court documents, directly caused economic injury through stolen surplus funds. These allegations easily satisfy § 349's requirements.

### C.  Plaintiff has sufficiently pled facts to support a claim under Judiciary Law § 487

In attempting to escape § 487 liability, Defendants raise two defenses: that law firms cannot be held vicariously liable and that this action constitutes an improper collateral attack.. Controlling authority defeats both arguments.

First, regarding vicarious liability, the First Department has explicitly upheld § 487 judgments against law firms for their attorneys' misconduct. *NYC Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 78 (1st Dep't 2000). While § 487 has criminal law origins, its civil enforcement serves the broader purpose of deterring attorney misconduct in judicial proceedings. *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 182 (2020). Permitting law firms to escape liability by acting through employed attorneys would eviscerate this deterrent effect.

Second, this action seeks damages for fraudulent conduct, not vacation of any judgment. The Second Circuit's decision in *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022), directly addresses this distinction, holding that § 487 claims focusing on "intent to deceive" are independent of the underlying judgment's validity. Plaintiff seeks compensation for Defendants' knowing submission of false calculations designed to steal surplus funds—a fraud claim that exists regardless of the foreclosure judgment's continued validity.

### i.   *Plaintiffs' Damages under Judiciary Law § 487 and their Legal Malpractice Claims are distinct*

*Gorbatov v. Tsirelman*, 155 A.D.3d 836, 838 (N.Y. App. Div. 2d Dep't 2017) distinguishes between Judiciary Law § 487 (requiring "intent to deceive") and malpractice ("based on negligent conduct"). *Id.* at 838. Plaintiff alleges both in her First Amended Complaint.

In regards to Third-Party Malpractice Damage, the knowing submission of fraudulent documents intended to deprive Plaintiff of surplus funds—satisfying the fraud exception for non-client claims. In regards to § 487 Damage, each act of deceit upon the court caused distinct injuries to Plaintiff as a party to the proceeding

Here, Plaintiff was the direct, intended victim of each deceptive act, suffering concrete losses from each fraudulent submission to the court. Under *Gorbatov*'s framework, the Amended

Complaint properly pleads both claims with the required particularity, establishes the fraud/collusion exception for third-party malpractice, and demonstrates Plaintiff's standing as a party injured by deceits in her own foreclosure proceeding. The case should proceed to discovery.

### D. Plaintiff has sufficiently pled facts to support a Civil RICO claim against all Defendants

The Complaint describes an enterprise-wide conspiracy involving standardized fraudulent methods, coordinated document submission across multiple courts, systematic surplus theft, and concealment through superficially proper filings.

#### i. The First Amended Complaint adequately establishes predicate acts with the requisite particularity

Defendants generally state that the Second Circuit categorically barred "litigation activity" from serving as predicate acts for the purposes of a RICO violation. However, this strategically omits key language from the Second Circuit's decision in *Kim v. Kimm*:

> We decline to reach the issue of whether all RICO actions based on litigation activity are categorically meritless. We conclude only that where, as here, a plaintiff alleges that a defendant engaged in a ***single frivolous, fraudulent, or baseless lawsuit***, such litigation activity alone cannot constitute a viable RICO predicate act.

*Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (emphasis added).

In distinguishing *Sykes v. Mel Harris & Associates.*, LLC, 757 F.Supp.2d 413 (S.D.N.Y. 2010), the Second Circuit noted that, "even though those defendants used litigation to carry out their scheme, they also engaged in a variety of other out-of-court actions to further this activity. In the case at bar, by contrast, the entire alleged scheme involved the creation of fraudulent court documents." *Kimm*, 884 F.3d at 105. The Second Circuit reasoned that because the only predicate acts alleged by the plaintiff were four instances of the defendant law firm "preparing,

signing, and electronically filing" declarations containing allegedly fraudulent statements, these filings alone could not constitute predicate acts. *Id.* at 103-104.

Here, Plaintiff alleges a far more intricate web of conduct which involves in and out of court activity. As alleged in Plaintiff's complaint, Shellpoint and Shapiro coordinate to draft documents which improperly charge compound interest in violation of New York law. *See* Am. Compl. ¶¶ 62-69, 95-123. In other words, surplus monies, which contain amounts not legally permitted to be collected under New York Law, ultimately get transferred to BONYM after a foreclosed property is sold at auction. These monies are awarded as a result of unlawful and/or fraudulent filings submitted by Shapiro. Such filings were done at the direction of Shellpoint, who serves as Shapiro's primary point-of-contact and provides the affidavits and other factual support required to prosecute the underlying foreclosure.

 Such alleged conduct, which is outlined in detail in Plaintiff's complaint, extends far beyond just one law firm filing declarations with fraudulent facts. Indeed, Plaintiff's complaint alleges facts far more similar to *Sykes*, *supra*, and *Carrol v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716 at *9 (N.D.N.Y. Nov. 30, 2020) (determining that a complaint which alleged that a debt-buying company, law firm, process-serving company, and others conspired to "accomplish a large-scale fraud scheme," via buying debt, initiating lawsuits, improperly serving defendants, and filing fraudulent affidavits of service in order to "extract legally unjustified payments," sufficiently identified predicate acts which constituted a pattern of racketeering).

As such, Plaintiff's Amended Complaint has sufficiently alleged predicate acts required to sustain a cause of action for a substantive Civil RICO claim under 18 U.S.C. § 1962.

ii.    *Plaintiffs have pleaded the instances of mail and wire fraud with the requisite particularity*

Allegations of predicate mail and wire fraud acts "should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." S*pool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (alteration in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993)). Here, the Amended Complaint adequately pleads facts to comprise these requirements.

First, the content of the communications are directions from Shellpoint and BONYM to Shapiro to incorrectly compute interest owed on the Subject Mortgage, as well as Shapiro incorporating and ultimately conveying this calculation the New York Courts and court personnel. *See* Am. Compl. ¶¶ 11-15, 42-50, 95-127. Plaintiff not only details each of the Defendants' participation in their respective foreclosure proceedings, but also allege that upon their review of other foreclosure dockets that there are hundreds of members of the class. See Am. Compl. ¶ 71.

Additionally, Plaintiffs have sufficiently alleged why such communications were fraudulent by juxtaposing Defendants' calculations with the correct calculations supported by New York law. Am. Compl. ¶ 69.

Next, Plaintiff has adequately alleged who was involved. Specifically, the First Amended Complaint alleges that the fraudulent scheme involves all Defendants. Am. Compl. ¶¶ 95-127.

Finally, Plaintiff has pled how the communications took place by specifically alleging, *inter alia*, the following:

> 121. Specifically, members of the Enterprise maintain offices in New York and use personnel in these offices to originate, underwrite, fund, assign, service and collect upon mortgages made or purchased by the Enterprise to entities throughout the United

States via extensive use of interstate emails, mail, wire transfers and withdrawals processed through an 44 automated clearing house.

122. In the present case, all communications between the members of the Enterprise, were by interstate email, mail, online state and federal court portals (New York State Courts Electronic Filing or the Federal Case Management/Electronic Court Filing System), wire transfers or ACH debits and other interstate wire communications. Specifically, the Enterprise used interstate emails and court portals to submit the fraudulent court filings discussed supra.

123. In addition, at the direction of Defendants, each of the alleged fraudulent court filings listed supra were sent from outside of New York to Enterprise offices within New York via Federal Express or United States Postal Service to either be manually filed in the relevant County Clerk's office or through online court portals (New York State Courts Electronic Filing or the Federal Case Management/Electronic Court Filing system).

*See* Am. Compl. at pp. 33-34.

For these reasons, Plaintiff precisely articulated the Defendants' misrepresentations and fraud, identified how Defendants carry out their fraudulent scheme, and particularize when and where such misrepresentations took place.

### iii.    *Plaintiff has alleged an Association-in-Fact Enterprise*

An Enterprise exists for the purposes of RICO when there is a "common purpose of engaging in a course of conduct," and its existence is "proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 426 (S.D.N.Y. 2010) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir.2004) (internal citation omitted)). More succinctly, an "association-in-fact enterprise" must have the following features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v.*

*United States*, 556 U.S. 939, 946, (2009).

Here, Defendants generally assert that Plaintiffs have failed to allege the existence of an association-in-fact enterprise because Plaintiffs have not demonstrated that Defendants have worked together to form an integrated, interconnected criminal enterprise. However, Defendant's characterization of a highly-organized, structured enterprise is not required to adequately plead an association-in-fact enterprise. The Supreme Court of the United States has previously held that, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. It further explained that:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.

*Id.*

In light of this explanation, the First Amended Complaint more than explains how the Defendants make up an association-in-fact enterprise.

First, Plaintiffs identify the Enterprise's common purpose of obtaining surplus funds from state foreclosure proceedings in excess of what is legally allowed. Am. Compl. ¶ 101.

Next, the Enterprise achieves this purpose through coordinating and producing court documents which unlawfully calculate this excess interest. More specifically, Shellpoint works with Shapiro to determine how much interest is due on the Subject Mortgage. This collaboration is evident from the State Court Filings, as representatives from Shellpoint signed affidavits and

testified that they were custodians of various financial documents utilized to calculate the amount due on the Subject Mortgages. Am. Compl. ¶ 58. Shapiro files these affidavits and documents, further attesting to their validity. *See* Am. Compl. ¶¶ 59-69. Shapiro does so at the behest of BONYM, who is Shapiro's client and generally directs the course of litigation. Finally, after a foreclosure auction is completed, the Defendants again coordinate to determine the final amounts due on the Subject Mortgages so as to receive these amounts from the proceeds of the sales. *See* Am. Compl. at ¶¶ 62-69. Such activities require the Defendants to work with one another and for BONYM to direct Shellpoint and Shapiro to draft and file these documents. The argument that all Defendants were simply "working independently" is disingenuous; the inherent nature of foreclosure proceedings require that the Defendants work together to receive a final judgment.

Finally, Plaintiff alleges that the Enterprise has engaged in this scheme for years. *See* Am. Compl. ¶ 102. Further, Plaintiffs allege that the relationship between the Defendants has been longstanding and ongoing. Am. Compl. ¶ 101. As such, the Enterprise's longevity has certainly permitted the Defendants to pursue their common purpose for the life of hundreds, if not more, foreclosure proceedings.

Therefore, Plaintiff has adequately alleged an association-in-fact Enterprise for the purposes of Civil RICO liability.

### E.  Plaintiff has sufficiently pled facts to support her Tort claims
#### i.  *Negligence and Gross Negligence*

The general principle that attorneys owe no duty to adversaries, which Defendants invoke, ECF No. 34 at 31-32, yields to established exceptions when fraud enters the picture. New York law recognizes that "fraud, collusion, malicious acts or other special circumstances" can create duties even absent privity. *Estate of Schneider v. Finmann*, 15 N.Y.3d 306, 308-09

(2010). The Second Circuit recently applied this principle in the foreclosure context, allowing negligence claims against attorneys whose fraudulent conduct harmed third parties. *Hansen*, 52 F.4th at 100.

Plaintiff's allegations go far beyond zealous advocacy into deliberate fraud. The systematic falsification of interest calculations to steal surplus funds from already-dispossessed homeowners creates precisely the "special circumstances" that strip away adversarial immunity. For gross negligence, the conscious disregard inherent in repeatedly submitting calculations Defendants knew to be false demonstrates the heightened culpability required. These are not claims about litigation strategy but about calculated theft through fraudulent mathematics.

### ii.    *Legal Malpractice*

Acknowledging the absence of a traditional attorney-client relationship, Plaintiffs maintain this claim under alternative theories including the fraud exception.

New York Courts recognize that third-party malpractice claims survive dismissal when "fraud, collusion, malicious acts, or other special circumstances" exist. *Gorbatov v. Tsirelman*, 155 A.D.3d 836, 840 (N.Y. App. Div. 2d Dep't 2017) (citations and internal quotation marks omitted). Here, unlike *Gorbatov* where damages were incurred "only by the clients represented by the defendants," (*Id.*) Plaintiffs suffered distinct, targeted injuries as the intended victim of Defendants' fraudulent scheme.

The First Amended Complaint alleges precisely the "fraud and collusion" exception recognized in *Gorbatov*. Defendants knowingly submitted false interest calculations to steal surplus funds from Plaintiff. Further, Defendants coordinated to inflate the judgment through compound interest.

This exceeds *Gorbatov*'s threshold where the court found allegations of conspiracy with billing agents to convert funds sufficient to state a claim. Here, Defendants did not just

29

mishandle client funds—they orchestrated a scheme specifically targeting foreclosed homeowners' equity.

### iii.    Unjust Enrichment

Under New York Law, an unjust enrichment claim is the "equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (quoting *Miller v. Schloss*, 218 N.Y. 400, 407 (N.Y. 1916) (internal quotation marks omitted)). In order to adequately plead an unjust enrichment claim, a plaintiff must allege that "(1) the other party was enriched, (2) at that [plaintiff]'s expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiffs have adequately pled the above elements. First, Plaintiff alleges that BONYM was enriched because they received $23,831.19  more than it was legally entitled, to the detriment of Plaintiff. *See* Am. Compl.¶ 69. Plaintiff alleges that this enrichment was at Plaintiff's expense because, had interest been correctly calculated, Plaintiff would have received surplus funds resulting from the sale of the Subject Property. *See Id.* at ¶ 147. Finally, Plaintiffs have sufficiently alleged, through their detailed factual recitations throughout the First Amended Complaint, that it would be against equity and good conscience to permit BONYM to retain the benefit the Subject Properties' sale as their own fraudulent actions procured the benefits of the sale..

While it may be true that the existence of a valid contract ordinarily precludes an unjust enrichment claim (*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 , 53-54 (E.D.N.Y.), on *reconsideration sub nom. In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014) (applying New York and California

law)), such is not the case "where the contract does not cover the dispute in issue." *Plumitallo v.*

*Hudson Atlantic Land Co.*, 74 A.D.3d 1038, 1039 (N.Y. App. Div. 2d Dep't 2010) (citations and

internal quotation marks omitted).  Here, the respective Subject Mortgage does not cover the

issue in dispute as Plaintiffs are alleging improper interest calculations which are not permissible

under New York law. While the Subject Mortgage permits post-default interest to accrue, no

valid contract can support an illegal method of computation. Indeed, the Subject Mortgages do

not include the exact calculations utilized by Defendants in the Reports of Sale.

As such, Plaintiff has properly alleged their unjust enrichment claim and BONYM's

motions to dismiss should be denied in this respect.

### iv.    *Prima Facie Tort*

Defendants challenge both the "disinterested malevolence" element. The Complaint's

detailed allegations satisfy this requirement.

"Disinterested malevolence" requires that harm be inflicted for its own sake, "unmixed

with any other" motive. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333

(1983). While business advantage typically negates this element, courts recognize exceptions for

systematic schemes targeting vulnerable populations. *NYC Transit Auth.*, 276 A.D.2d at 78.

Here, Defendants specifically targeted foreclosure victims—people who had already lost their

homes and were unlikely to scrutinize complex calculations buried in court filings.  This

deliberate exploitation of vulnerability transcends mere profit-seeking.

### v.    *Conversion*

Defendants' assertion that they never possessed surplus funds misunderstands both

conversion law and their role in the misappropriation.

Conversion requires "dominion over the property or interference with it, in derogation of

plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006).

This encompasses constructive control through manipulation of distribution mechanisms. By submitting fraudulent calculations that determined how the Referee distributed sale proceeds, Defendants exercised dominion over funds belonging to Plaintiff. That the money passed through court custody does not break the chain of causation or eliminate liability for orchestrating its misappropriation.

As for ratification, Defendants cannot invoke a defense premised on Plaintiff's ignorance of their fraud. Ratification requires "full knowledge of the facts." *Orix Credit All. v. Phillips-Mahnen, Inc.*, No. 89 CIV. 8376, 1993 WL 183766, at *4 (S.D.N.Y. May 26, 1993). Plaintiff accepted a reduced surplus without knowing about the fraudulent calculations that diminished it. ECF No. 33, at 162-164. No valid ratification can arise from concealed fraud. *Valentine Transit, Inc. v. Kernizan*, 191 A.D.2d 159, 161 (1st Dep't 1993).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that all of the Defendants' motions to dismiss be denied in their entirety.

Dated: September 15, 2025

Respectfully submitted,

**ANDERSON, BOWMAN & WALLSHEIN PLLC**

 */S/ MARK S. ANDERSON  /S/*
Mark S. Anderson, Esq.
*Counsel for Plaintiff*