UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BARBARA SMALL, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

LOGS LEGAL GROUP LLP F/K/A SHAPIRO, DICARO & BARAK, LLC, NEWPENN FINANCIAL LLC d/b/a SHELLPOINT MORTGAGE SERVICING, THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSETBACKED CERTIFICATEHOLDERS, SERIES 2006-24,

       Defendants.

Case No.: 1:25-cv-01834-MKB-SDE

-------------------------------------------------------------X

# DEFENDANT LOGS LEGAL GROUP LLP'S
# REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................................1

    A.     Plaintiff's suit is barred, in its totality, by the *Rooker-Feldman* doctrine ............... 1

    B.     Plaintiff recasts her claims to avoid the clear application of judicial estoppel. ................................................................................................................. 5

    C.     Plaintiff's contention that her claims did not accrue until the filing of the Referee's Report of Sale ignores the effect of the JFS entered in March 2019. ................................................................................................................... 5

    D.     The majority of the claims against LOGS do not state a claim for relief. .............. 7

        1.     Judiciary Law § 487 ................................................................................... 7

        2.     RICO .......................................................................................................... 8

        3.     Negligence, Gross Negligence and Legal Malpractice .............................. 9

        4.     Prima Facie Tort ...................................................................................... 10

        5.     Conversion ............................................................................................... 10

CONCLUSION .......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Barlow v. Nationstar Mortgage LLC*, No. 21-1483, 2022 WL 950949 (2d Cir. Mar. 30, 2022) ........................................................................................................................3

*Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103 (E.D.N.Y. 2020)..........................4

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) ...................................................................4

*Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719 (S.D.N.Y. Mar. 21, 2017)......... 3-4

*Gifford v. United N. Mortgage Bankers, Ltd.*, No. 18CIV6324PAEHBP, 2019 WL 2912489 (S.D.N.Y. July 8, 2019) ................................................................................ 3-4

*Hansen v. Miller*, 52 F.4th 96 (2d Cir. 2022) .......................................................................3-4, 8-9

*Hansen v. Miller*, No. 19CV04519DRHAKT, 2020 WL 5802289 (E.D.N.Y. Sept. 29, 2020) ........................................................................................................................4

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)..........................................2

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ......................................................................................8

*Limtung v. Thomas*, No. 19CV3646RRMSJB, 2019 WL 6253815 (E.D.N.Y. Nov. 21, 2019) ........................................................................................................................3

*Michalski v. Home Depot, Inc.*, 225 F.3d 113 (2d Cir. 2000)........................................................7

*Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414 (D.D.C. 2011) .....................................7

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018).........................................................4

*Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).........................4, 9

*Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015).......................................4, 8

*Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016) ........................................................................3

*Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20 (2d Cir. 2016)............................3

**State Cases**

*Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173 (2020) .......................................................7

*Cramer v. Sabo*, 31 A.D.3d 998 (3d Dep't 2006).........................................................................8

*Furman v. Wells Fargo Home Mortg., Inc.*, 105 A.D.3d 807 (2d Dep't 2013)..........................2, 6

*Gorbatov v. Tsirelman*, 155 A.D.3d 836 (1st Dep't 2017) ................................................................. 9

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ......................................................... 1

*Melcher v. Greenberg Traurig LLP*, 135 A.D.3d 547 (1st Dep't 2016) ............................................ 8

*Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10 (2014) .............................................................. 7

*NYC Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dep't 2000) ................................. 7

*People v. Byrne*, 77 N.Y.2d 460 (1991) ............................................................................................ 7

*Estate of Schneider v. Finmann*, 15 N.Y.3d 306 (2010) ................................................................... 9

**State Statutes**

Judiciary Law § 487 ..................................................................................................................... 5, 7-8

LOGS files the following reply memorandum of law in support of its motion to dismiss.[1]

## ARGUMENT

### A.  Plaintiff's suit is barred, in its totality, by the *Rooker-Feldman* doctrine.

Plaintiff challenges application of the *Rooker-Feldman* doctrine because "the second and third prongs are not met and, thus, the doctrine does not apply." ECF No. 39 at 3.

First, Plaintiff argues that "Defendants alone computed interest using unlawful methods after the entry of the JFS and the sale of the foreclosed property," and "Plaintiff complains of injuries caused by Defendants' fraudulent calculations of interest in the final stages of foreclosure proceedings—not the underlying JFS."[2] ECF No. 39 at 4.

This is a complete reinvention of the Amended Complaint. Plaintiff alleges that LOGS submitted a proposed form of judgment which provided, *inter alia*, that following the sale of the Property, the referee was to pay "the sum of $851,989.30 . . . together with interest thereon pursuant to the terms of the Note from January 31, 2018, the date interest was calculated to in said Report, to the date of entry of this Order." ECF No. 33, ¶ 59; ECF No. 35-11 (proposed JFS). This language—requiring the calculation of interest in the manner that Plaintiff now complains of—was then incorporated into the JFS.[3] ECF No. 33, ¶ 60; ECF No. 35-13 (entered

---

[1] Unless otherwise stated, capitalized terms have the same meaning as used in LOGS's opening brief. ECF No. 34-1.

[2] Plaintiff's repeated insistence that the proposed JFS, as well as the subsequent submission of proposed disbursement figures to the Referee, were "fraudulent," is a misuse of the term. Fraud requires a material misstatement of **fact**. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011). A request for relief from a court is not a representation of fact, but is rather a party's position as to what the law mandates, one which the other party (especially a represented party like Plaintiff) is entitled to, and could, challenge when asserted.

[3] It bears emphasis that the very core of Plaintiff's contentions is that the New York state courts (including referees appointed by the court) are simply unwilling, and unable, to actually engage in their jobs and review and scrutinize the requests for relief litigants put before them. Contrary to Plaintiff's hyperbolic assertions "that court personnel and court-appointed individuals . . .
(Continued…)

JFS). As directed by the JFS, the Referee calculated the final amount due to include interest at the rate set forth in the Note, "from February 1, 2018 . . . to the date of entry of this Order," *i.e.*, March 8, 2019. ECF No. 33, ¶ 64; ECF No. 35-15 (Referee's Report of Sale).

Contrary to Plaintiff's contentions, the JFS was not merely "a facilitating factor" in the allegedly "fraudulent interest calculations" in the Referee's Report of Sale, ECF No. 39 at 4, but it was the **sole** cause of those calculations. The JFS directed the Referee to calculate default note interest during what Plaintiff terms the "Motion Determination Period," *viz*., the period between the filing of the motion for JFS and the date the state court grants such a motion. ECF No. 33, ¶ 41. The Referee could not simply disburse funds in a manner inconsistent with the JFS. *Furman v. Wells Fargo Home Mortg., Inc.*, 105 A.D.3d 807, 810 (2d Dep't 2013) (a referee's duties are defined by, and limited to, the order of reference, and a referee lacks jurisdiction to go beyond that reference). Rather, both the Referee and LOGS were constrained to follow the State Court's calculation in the JFS. In these circumstances, the second prong of *Rooker-Feldman* is satisfied. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) ("Can a federal plaintiff avoid *Rooker–Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not.").

Second, Plaintiff argues that her "claims do not invite this Court's review and rejection of the underlying foreclosure judgment. This Court can thus consider Plaintiff's claims without assessing the validity of the JFS."[4] ECF No. 39 at 7. *Rooker-Feldman* does not preclude a claim

---

blindly approve and sign" submissions made to them "as a rubber stamp," ECF No. 33, ¶ 12, the entered JFS reflects that the State Court corrected minor calculation errors before signing the order. ECF No. 35-13 at 7. That hardly suggests a court asleep at the switch.

[4] Plaintiff likewise argues that *Rooker-Feldman* cannot apply because "the relief Plaintiff seeks . . . would not invalidate the JFS if granted." ECF No. 39 at 4. This argument fails for the same reason as Plaintiff's contentions that the third *Rooker-Feldman* prong is not satisfied.

for damages where "the district court can determine damages liability without reviewing the propriety of the state court judgment." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016). But, "the Second Circuit has made it clear that such an exception only applies to [] claims the adjudication of which 'does not require the federal court to sit in review of the state court judgment.'"[5] *Gifford v. United N. Mortgage Bankers, Ltd.*, No. 18CIV6324PAEHBP, 2019 WL 2912489, at *9 (S.D.N.Y. July 8, 2019) (citation omitted).

In this case, Plaintiff cannot "prevail on [her] claims in this Court without a finding that the state court judgment was wrong." *Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, at *6 (S.D.N.Y. Mar. 21, 2017). Plaintiff claims that she was improperly charged interest on the total amount due on her Mortgage. Because that calculation was mandated in the JFS, Plaintiff can only prevail if this Court determines that the JFS violated New York law. *Rooker-Feldman* therefore applies. *Barlow v. Nationstar Mortgage LLC*, No. 21-1483, 2022 WL 950949, at *2 (2d Cir. Mar. 30, 2022) ("even if [plaintiff] could establish that the alleged fraud 'existed' prior to the state court judgment, that fact would be irrelevant because the injuries that he claimed in district court, as noted above, were produced by the foreclosure judgment, and the primary remedies he sought could be addressed only by reversing it"); *Francis*, 2017 WL 1064719 at *6 ("Plaintiff only suffered an injury from Defendants' alleged fraud if in fact BNY Mellon lacked standing, so Plaintiff could not prevail on his claims in this Court without a finding that the state court judgment was wrong."). "Plaintiff is not permitted to sidestep *Rooker-*

---

[5] Plaintiff's authority is not to the contrary. *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (*Rooker-Feldman* "**generally** does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding" (emphasis added)); *Limtung v. Thomas*, No. 19CV3646RRMSJB, 2019 WL 6253815, at *4 (E.D.N.Y. Nov. 21, 2019) (same); *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *4 (S.D.N.Y. Aug. 22, 2016) (same).

*Feldman* . . . where it is clear that the damages plaintiff seeks are aimed at compensating her for the loss of her property.'" *Gifford*, 2019 WL 2912489 (cleaned up); *Francis*, 2017 WL 1064719 at *6 ("even to the extent he seeks damages rather than declaratory or injunctive relief, Plaintiff is inviting this Court to 'sit in review of the state court judgment.'" (citation omitted)).

      Plaintiff's authority does not assist her. In *Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018), the plaintiffs did "not argue that the state courts committed any error in so-ordering the parties' agreements," but rather the underlying conduct itself, so "the claim does not function as a *de facto* appeal." *Id*. at 647. In *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015), the defendant law firm utilized fraudulent "sewer service" and then obtained default judgments. *Id*. at 75-78. Those claims were necessarily "independent of the state-court judgments and do not seek to overturn them" because, by the time suit was filed, "all plaintiffs have had the default judgments against them vacated or discontinued." *Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 110 (E.D.N.Y. 2020) (same). In *Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021), the plaintiffs sought return of excess tax sale proceeds on their property over and above that amount awarded to the City in foreclosure proceedings, and focused on the lack of a process to return excess proceeds to them. *Id*. at 108. And the claims in *Hansen* were that the parties in a foreclosure had colluded with each other, and conspired against the plaintiff (a competing lienholder). *Hansen v. Miller*, No. 19CV04519DRHAKT, 2020 WL 5802289, at *3 (E.D.N.Y. Sept. 29, 2020).

      In sum, Plaintiff's argument that claims related to the "unlawful interest calculations in the post-auction phase of foreclosure proceedings can be considered independently of the merits of the JFS" is flatly inconsistent with the allegations of the Amended Complaint, and the filings in the Foreclosure Action. ECF 39 at 8. Therefore, *Rooker-Feldman* applies to bar this suit.

-4-

### B. Plaintiff recasts her claims to avoid the clear application of judicial estoppel.

Plaintiff claims that judicial estoppel cannot apply because her "decision not to contest the foreclosure . . . is entirely consistent with her present claims challenging Defendant's fraudulent interest calculations designed to steal surplus funds." ECF No. 39 at 14. Plaintiff is again playing fast and loose. Estoppel is not based on "Plaintiff's decision not to contest the foreclosure." For one thing, Plaintiff vigorously (though ineffectively) contested the Foreclosure Action. ECF No. 34-1 at 2-6. More critically, Plaintiff moved to confirm the Referee's Report of Sale, which "revealed the Defendants' fraudulent scheme," when it was filed with the Court in February 2021. ECF No. 33, ¶ 63; ECF No. 35-17 (Plaintiff's Motion to Confirm). As a result of that Motion to Confirm, Plaintiff received the precise relief requested, *i.e.*, that the Referee's Report of Sale be "in all things confirmed," and her surplus funds released to her. ECF No. 35-20. It is harder to imagine a better example of the circumstances in which judicial estoppel should apply. Plaintiff's refusal to even address these facts is a concession that LOGS is correct.

### C. Plaintiff's contention that her claims did not accrue until the filing of the Referee's Report of Sale ignores the effect of the JFS entered in March 2019.

Once again running away from her own allegations at warp speed, Plaintiff argues that her Judiciary Law § 487 claim, which has a six-year statute of limitations, is not time-barred because it did not accrue until the date the Referee's Report of Sale was filed on the Court's docket in February 2021. ECF No. 39 at 15. Plaintiff accuses LOGS of having "a fundamental misunderstanding of [her] claims," which are completely divorced from the JFS. *Id*.

The Amended Complaint pleads that Defendants' supposed wrongful scheme came to fruition when, following the referee's issuance of a report of amount due, counsel for a foreclosure plaintiff would "draft, review and submit . . . [a] proposed order granting the relief the plaintiff is seeking from the court," one that improperly "award[s] a judgment amount

-5-

matching the one provided on the Referee's Report and state to compute interest on this judgment amount at the mortgage note rate from the date the Referee's Report was issued, not the date the judgment was actually entered by the court." ECF No. 33, ¶ 30(v); *id*., ¶ 44.

In Plaintiff's case, "[o]n or about September 24, 2018," LOGS submitted "a proposed order drafted" that was entered on March 8, 2019. ECF No. 33, ¶ 59. From an accrual standpoint, the alleged wrong was complete: by "draft[ing] and submit[ting] proposed orders . . . which include language awarding illegal compound interest to the noteholders" to the State Court, LOGS had procured an order that "award[ed] illegal compound interest to the noteholders." *Id*., ¶ 44. The Referee was bound by that order, and thus required to disburse the funds in the manner required therein. *Furman*, 105 A.D.3d at 810. The fact that the supposed "ultimate misappropriation of sale proceeds" pursuant to the explicit language of the JFS did not occur until later is irrelevant, and Plaintiff provides no authority otherwise. ECF No. 39 at 15.

Plaintiff concedes, *sub silentio*, that her other claims are presumptively time-barred by pivoting to "the doctrines of fraudulent concealment and equitable tolling." ECF No. 39 at 15. She says that the calculation of interest was "not visible to the plaintiff-borrower, the court, nor subordinate lienholders at the time the JFS is granted; rather, it only becomes discoverable until after the foreclosure auction has occurred and Defendants file the Report of Sale." *Id*. at 16-17.

This argument is nonsensical. The JFS "award[ed] a judgment amount matching the one provided on the Referee's Report and state to compute interest on this judgment amount at the mortgage note rate from the date the Referee's Report was issued, not the date the judgment was actually entered by the court." ECF No. 33, ¶¶ 30(v), 44, 59. How can Plaintiff claim that the language of a signed, entered judgment of which she indisputably had notice was "not visible" or not "discoverable?" Rather, this is a variation of her theory that it was not until she consulted with her current counsel in March 2025 that she understood the legal significance of what

-6-

occurred in the Foreclosure Action. ECF No. 39 at 17-18. Tolling, however, does not apply to situations where the plaintiff has knowledge of the facts underlying her claim, but claims to lack knowledge of the law. *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 418-19 (D.D.C. 2011). As such, Plaintiff's reliance upon cases addressing allegedly self-concealing frauds is totally inapposite. ECF No. 39 at 17-18. Plaintiff's claims are barred by the statute of limitations.

  **D. The majority of the claims against LOGS do not state a claim for relief.**

   **1. Judiciary Law § 487**

Plaintiff argues that her cause of action under Judiciary Law § 487 states a claim because (1) the statute permits the assertion of vicarious liability against a law firm for acts of its employees and (2) this suit is on a fraud claim independent of the underlying judgment in the Foreclosure Action. ECF No. 39 at 22. Both arguments are wrong.

"[A] violation of section 487 is a crime," and thus New York courts are "circumspect to ensure 'that penal responsibility is not extended beyond the fair scope of the statutory mandate.'" *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178 (2020). Because it runs counter to the premise of individual responsibility, New York is "most reluctant to embrace the doctrine of vicarious liability for use in the criminal sphere." *People v. Byrne*, 77 N.Y.2d 460, 466 (1991).

Plaintiff cites *NYC Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dep't 2000), as having "explicitly upheld § 487 judgments against law firms for their attorneys' misconduct." ECF No. 39 at 22. That decision, however, was expressly abrogated in 2014. *Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 14 (2014). Moreover, even if the law firm there was held liable—which is not apparent from the case itself—the case has no reasoned discussion of vicarious liability. Given the Court of Appeals' emphasis on the criminal nature of Judiciary Law § 487 and the presumption against vicarious criminal liability, a quarter-century-old intermediate appellate decision should not be followed. *Michalski v. Home Depot, Inc.*, 225

-7-

F.3d 113, 116 (2d Cir. 2000) (intermediate appellate court decisions are not binding in diversity where there is "persuasive data that the highest court of the state would decide otherwise").

Plaintiff also says that "this action seeks damages for fraudulent conduct, not vacation of any judgment," and is thus "independent of the underlying judgment's validity." ECF No. 39 at 22. As explained in LOGS's opening brief, the distinction being drawn by Plaintiff is contrary to multiple Appellate Division decisions holding that a plaintiff cannot use Judiciary Law § 487 "to collaterally attack a[] prior adverse judgment or order on the ground that it was procured by fraud." *Melcher v. Greenberg Traurig LLP*, 135 A.D.3d 547, 554 (1st Dep't 2016); *Cramer v. Sabo*, 31 A.D.3d 998, 999 (3d Dep't 2006). The decision in *Hansen* does not suggest otherwise, as in that case, the Court held that the plaintiff could "proceed on her section 487 claims to the extent that those claims do not dispute the validity of the Rachel Mortgage," *i.e.*, the subject of the original suit. *Hansen*, 52 F.4th at 102. For all the reasons stated above, Plaintiff's suit is inextricably tied into the validity of the JFS, and not "independent" in any material sense.

### 2. RICO

In response to LOGS's reliance upon the Second Circuit's decision in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), demonstrating that Plaintiff fails to allege a predicate act, she claims that she "alleges a far more intricate web of conduct which involves in and out of court activity" than what occurred in that case. ECF No. 39 at 24. That "web" consists of "Shellpoint and Shapiro coordinat[ing] to draft documents which improperly charge compound interest in violation of New York law," with the resulting funds "ultimately get[ting] transferred to BONYM after a foreclosed property is sold at auction." *Id*. Plaintiff is describing the ordinary routines of the litigation process, and even "frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Kim*, 884 F.3d at 104. It is also a far cry from what was alleged in the *Sykes* case, where a debt collector and its law firm "entered into joint

-8-

ventures to purchase debt portfolios, pursued debt collection litigation *en masse* against the alleged debtors, and sought to collect millions of dollars in fraudulently obtained default judgments," resulting in the filing of "133 debt collection actions per day." *Sykes*, 757 F. Supp. 2d at 419. That soup-to-nuts scheme is nothing like what is alleged here.

### 3. Negligence, Gross Negligence and Legal Malpractice

While acknowledging that ordinarily the absence of a duty owed by LOGS to Plaintiff would doom her negligence and gross negligence claims, that "general principle . . yields" where "'fraud, collusion, malicious acts or other special circumstances' can create duties even absent privity." ECF No. 39 at 28 (quoting *Estate of Schneider v. Finmann*, 15 N.Y.3d 306, 309 (2010)). Plaintiff, however, is unable to point to a single case where this exception has been applied to allow a person to bring negligence claims against an adversary's attorney.[6] In *Estate of Schneider*, the Court of Appeals relaxed strict privity solely to permit an estate's personal representative to bring a malpractice action against the decedent's attorney. 15 N.Y.3d at 309. And Plaintiff is simply wrong when she says that the Second Circuit in *Hansen* "allow[ed] negligence claims against attorneys whose fraudulent conduct harmed third parties." ECF No. 39 at 29. Rather, the Court "determine[d] that collateral estoppel bars Hansen from proceeding on her fraud and negligence claims against the Attorney Defendants." *Hansen*, 52 F.4th at 101.

The same is true of Plaintiff's legal malpractice cause of action. Plaintiff relies upon *Gorbatov v. Tsirelman*, 155 A.D.3d 836 (1st Dep't 2017), but that case involved a client and his attorneys. *Id*. at 837. It does not support the notion that a non-client, not in privity, can pursue a legal malpractice claim against **someone else's** attorney, let alone that of a litigation adversary.

---

[6] Plaintiff's position that a disappointed litigant can bring suit against her **adversary's** lawyer on a theory of negligence or legal malpractice would open up a Pandora's box of litigation, particularly in the foreclosure context, where borrowers (often pro se) are frequently losers.

####        4.        Prima Facie Tort

Plaintiff agrees that, to allege the "disinterested malevolence" required for a prima facie tort, she must allege more than mere "business advantage." ECF No. 39 at 31. Plaintiff says that "courts recognize exceptions" to this requirement "for systematic schemes targeting vulnerable populations." *Id*. (citation omitted). But that case does not even reference prima facie tort. Further, Plaintiff, who owned this million-dollar property as an investment, and hired two attorneys to represent her in the Foreclosure Action, is hardly in a "vulnerable population."

####        5.        Conversion

Even though Plaintiff never alleges (because she cannot) that LOGS ever possessed a dime of the proceeds of the sale of the Property, she nonetheless claims that it had "constructive control through manipulation of distribution mechanisms." ECF No. 39 at 32. Plaintiff provides no case adopting her theory that an attorney has "constructive control" over funds in the possession of the court, and this Court should not be the first.

Plaintiff also rejects ratification because "Defendants cannot invoke a defense premised on Plaintiff's ignorance of their fraud." ECF No. 39 at 32. Plaintiff asked the State Court to confirm the Referee's Report of Sale. ECF No. 35-17 to ECF No. 35-20. Indeed, Plaintiff had full knowledge of how the surplus funds distribution was calculated. ECF No. 33, ¶ 63. As such, Plaintiff's claim she "accepted a reduced surplus without knowing about the fraudulent calculations that diminished it" falls apart under the most basic scrutiny. ECF No. 39 at 32.

## CONCLUSION

For the reasons above and in its opening brief, LOGS respectfully requests that the Court dismiss the Complaint against it, along with such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  October 6, 2025 | **DUANE MORRIS LLP** |
| | By:  */s/ Brett L. Messinger*  <br>Brett L. Messinger <br>Brian J. Slipakoff <br>22 Vanderbilt <br>335 Madison Avenue, 23rd Floor <br>New York, NY 10017-4669 <br>blmessinger@duanemorris.com <br><br>*Attorneys for Defendant LOGS Legal Group LLP f/k/a Shapiro DiCaro & Barak LLC* |