**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BARBARA SMALL,<br><br>      Plaintiff,<br><br>v.<br><br>SHAPIRO DICARO & BARAK LLC, NEWPENN FINANCIAL LLC d/b/a SHELLPOINT MORTGAGE SERVICING, THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, JOHN AND JANE DOE INVESTORS 1-10, and JOHN AND JANE DOES 1-10,<br><br>      Defendants. | Case No. 1:25-cv-01834-MKB-SDE |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATEHOLDERS, SERIES 2006-24'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**HUSCH BLACKWELL LLP**
Ryan L. DiClemente, Esq.
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
Tel: 202-378-5794
Fax: 202-378-2319
Ryan.DiClemente@huschblackwell.com

**Table of Contents**

Page(s)

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT ................................................................................................................. 1

I. PLAINTIFF CANNOT COLLATERALLY ATTACK THE FORECLOSURE JUDGEMENT................................................................................................................ 1

    A. Plaintiff's Claims Are Barred By Res Judicata............................................................ 1

    B. The Rooker-Feldman Doctrine Bars Plaintiff's Claims............................................... 3

    C. Plaintiff's Claims Are Barred By Judicial Estoppel .................................................... 5

II. PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................................. 6

III. PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION FAIL............................................ 7

    A. Plaintiff Fails to Address the Defects of Her FDCPA Claim ..................................... 7

    B. Plaintiff's Prima Facie Tort Claim Cannot Stand........................................................ 8

    C. Plaintiff Fails to State a Claim for Violation of N.Y. Gen. Bus. Law § 349 .............. 8

    D. Plaintiff Fails to State a Conversion Claim................................................................. 8

    E. Plaintiff Ignores the Fatal Flaws of her Unjust Enrichment Claim. ........................... 9

    F. Plaintiff's RICO Claim Cannot Survive ..................................................................... 9

CONCLUSION............................................................................................................................ 10

## Table of Authorities

Page(s)

**Cases**

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) .................................................................................................. 7

*Babb v. Capitalsource, Inc.*,
  588 F. App'x 66 (2d Cir. 2015) ............................................................................................ 4

*China Trust Bank of New York v. Standard Chartered Bank*, PLC,
  981 F. Supp. 282 (S.D.N.Y. 1997) ...................................................................................... 9

*Cicorelli v. Hickey's Carting, Inc.*,
  66 A.D.3d 626 (2d Dept. 2009) ........................................................................................... 3

*De Sole v. Knoedler Gallery, LLC*,
  974 F.Supp.2d 274 (S.D.N.Y. 2013) .................................................................................... 7

*Francis v. Fed. Nat'l Mortg. Ass'n*,
  No. 20-CV-5863 (EK)(MMH), 2023 WL 2707098 (E.D.N.Y. Mar. 30, 2023) ........................ 5

*Gabriele v. American Home Mortg. Servicing, Inc.*,
  503 Fed.Appx. 89 (2d Cir. 2012) .......................................................................................... 5

*Hansen v. Miller*,
  52 F.4th 96 (2d Cir. 2022) .................................................................................................... 5

*Limtung v. Thomas*,
  2021 WL 4443710 (E.D.N.Y. Sept. 28, 2021) ..................................................................... 4

*Lindow v. Argent Mortg. Co., LLC*,
  23-CV-8860 (AMD) (JAM), 2024 WL 4665181 (E.D.N.Y. Nov. 4, 2024) ............................. 5

*McCann v. Rushmore Loan Mgmt. Servs., LLC*,
  No. 15-CV-6502, 2017 WL 1048076 (E.D.N.Y. Mar. 16, 2017) .......................................... 2

*Michelo v. Nat'l Collegiate Student Loan, T. 2007-2*,
  419 F. Supp. 3d 668 (S.D.N.Y. 2019) .................................................................................. 5

*NYC Transit Auth.v. Morris J. Eisen, P.C.*,
  276 A.D.2d 78 (1st Dept. 2000) ........................................................................................... 8

*Randall v. Dish Network, LLC*,
  2018 WL 3235543 (E.D.N.Y. July 2, 2018) ......................................................................... 8

*Saint-Jean v. Emigrant Mortg. Co.*,
  129 F.4d 124 (2d Cir. 2025) ................................................................................................. 6

*Silvious v. Snapple Beverage Corp.*,
  793 F. Supp. 2d 414 (D.D.C. 2011) ..................................................................................... 7

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ................................................................................................... 4

*Toohey v. Portfolio Recovery Assocs., LLC*,
    No. 15-CV-8098 (GBD), 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016) ............................... 5, 7

*Vossbrinck v. Accredited Home Lenders, Inc.*,
    773 F.3d 423 (2d Cir. 2014) ................................................................................................ 5

*Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*,
    664 F.App'x 20 (2d Cir. 2016) ............................................................................................ 5

**Statutes**

N.Y. Gen. Bus. Law § 349 ............................................................................................................. 8

## PRELIMINARY STATEMENT

Plaintiff's Opposition seeks to avoid the dismissal of her Amended Complaint by entirely reframing her claims to be distinct from the Foreclosure Judgment.[1] However, no amount of creative lawyering can obscure the undisputed fact that the pre-judgment interest calculations, which Plaintiff now claims were unlawful, were expressly ordered in the Foreclosure Judgment. Thus, Plaintiff's claims arising from the allegedly unlawful pre-judgment interest calculations are inextricably tied with the Foreclosure Judgement itself. Plaintiff's Opposition offers no explanation for why neither she, nor her lawyer, challenged the pre-judgment interest calculations during the foreclosure, or why she instead, affirmatively moved to have the calculations confirmed. Regardless, Plaintiff cannot relitigate the pre-judgment interest calculation before this Court and her claims are further barred by the applicable statute of limitations. To be clear, Shellpoint and BNY are not asking this Court to affirm the validity of the pre-judgment interest calculations because the underlying merits of Plaintiff's claims are not currently before the Court. Instead, BNY and Shellpoint are asking the Court to find that this is not the appropriate forum to hear those claims and/or the time to challenge these calculations has long since passed. It is for these reasons, as well as those set forth in their Moving Brief, that Plaintiff's claims must be dismissed.

## LEGAL ARGUMENT

### I.  PLAINTIFF CANNOT COLLATERALLY ATTACK THE FORECLOSURE JUDGEMENT

#### A.  Plaintiff's Claims Are Barred By Res Judicata

Plaintiff attempts to avoid the application of res judicata by arguing: (i) Shellpoint is not in "privity" with any party in the underlying foreclosure action,[2] (ii) the current claims are based on

---

[1] Capitalized terms have the same meaning as in BNY and Shellpoint's Moving Brief. *ECF 36-1*.
[2] Plaintiff seemingly concedes Defendant US Bank, as Trustee, can assert the res judicata defense as the plaintiff in the underlying foreclosure action.

1

"different facts than those set forth in the underlying foreclosure action;" and (iii) res judicata cannot apply because of the Defendants' "fraudulent concealment." *ECF 39, p. 15-19*. Each of these arguments fail to raise valid basis to avoid the application of res judicata to bar her claims.

First, Plaintiff's contention that Shellpoint is not in privity with any party in the underlying foreclosure action is contradicted by her own allegations and New York law. Throughout Plaintiff's Amended Complaint, she refers to Shellpoint as the "mortgage servicing agent" who managed the loan for BNY, and who purportedly directed the underlying foreclosure action. *ECF 33, ¶ 27*. Even if Plaintiff could avoid her own allegations, which she cannot, this Court has repeatedly found mortgage servicers in privity when applying res judicata.[3]

Second, Plaintiff's contention that her claims are "unquestionably based on different facts than those set forth in the underlying foreclosure action" is divorced from the facts and claims in her Amended Complaint. *See ECF 39, p. 17*. Plaintiff's claims arise from allegations that "the Defendants" "conspired to systemically insert false figures into the pro-forma judgments of foreclosure and sale" and used "proposed orders…which include language awarding illegal compound interest to the noteholders" **before** any foreclosure judgment was entered. *ECF 33, ¶ 1, 44*. The entire foundation of Plaintiff's claims allege "Defendants prematurely utilize the final judgment amount to compute the pre-judgment interest" and "the amount due and owing on a mortgage is not finally determined until a court enters a [foreclosure judgment]." *ECF 33, ¶67 (emphasis added)*. The Foreclosure Judgment identified the amounts due and owing including, pre-judgment interest on the full judgment amount of $851,979.30 "pursuant to the terms of the Note" during the Motion Determination Period. *See ECF 37-16, p.8-9 (Foreclosure Judgment)*.

---

[3] See *McCann v. Rushmore Loan Mgmt. Servs., LLC*, No. 15-CV-6502, 2017 WL 1048076, at *5 (E.D.N.Y. Mar. 16, 2017)("the party servicing the mortgage is 'considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata.*'")(citations omitted).

2

The Referee's sale of the Property and calculation of the surplus simply included the same pre-judgment calculations that were ordered in the Foreclosure Judgment. In fact, the Referee had no authority to recalculate the interest calculations included in the Foreclosure Judgment. *See Cicorelli v. Hickey's Carting, Inc.*, 66 A.D.3d 626, 627 (2d Dept. 2009) (vacating a foreclosure sale when the referee took action beyond the Foreclosure Judgment). Thus, Plaintiff's claims are inextricably tied to the Foreclosure Judgement and her attempt to reframe her claims as arising from the "post-auction phase" of the foreclosure is utterly baseless.

Finally, Plaintiff's claim that the Defendants' alleged "fraudulent conduct" bars the application of res judicata is equally unavailing. Plaintiff cannot in good faith claim the interest calculations were "fraudulently concealed" when the Defendants allegedly inserted "false figures into the pro-forma judgments" and "proposed orders" during the Foreclosure and the Foreclosure Judgment itself expressly identified the allegedly unlawful interest. These pre-judgment interest calculations, which were readily apparent and unchallenged by Plaintiff, could never be "fraudulently concealed." Plaintiff's claims are therefore barred by res judicata.[4]

### B.     The Rooker-Feldman Doctrine Bars Plaintiff's Claims

Plaintiff seeks to avoid the *Rooker-Feldman* doctrine by claiming there is no causal link between her injury and the Foreclosure Judgment, and her claims do not require the review of the Foreclosure Judgment. *ECF 39, p. 9-15*. These contentions ignore the very basis of Plaintiff's claims and rely on an impossibly narrow view of the Foreclosure Judgment.

As set forth above, Plaintiff's claims are premised on the allegedly unlawful pre-judgment interest calculation submitted in proposed orders and memorialized in the Foreclosure Judgment.

---

[4] Even if Plaintiff could side-step the application of res judicata, which she cannot, she is unable to avoid the dismissal of her claims on the basis of collateral estoppel for the reasons set forth in Defendant Shapiro's Moving Brief and Reply, which are incorporated herein by reference. *See ECF 36-1, pp. 21-24; ECF 34-1, pp. 21-23.*

3

Plaintiff's contention that these interest calculations were simply "ratified by the court without any contemporaneous judicial review" is undermined by the very fact that the Court reviewed and revised the dates and amounts set forth therein. *ECF 39, p. 11; see also ECF 37-16, p. 8-9 (Foreclosure Judgment).* Plaintiff's contention that "Defendants alone computed interest…after the entry of the JFS and…during the post-auction stage of the litigation," flatly ignores the pre-judgment interest calculation contained in the Foreclosure Judgment. Any alleged deficiency arises solely from the interest calculations contained in the Foreclosure Judgment, which could not be modified by the Referee. Thus, Plaintiff's assertion that her claims are "unrelated" to the Foreclosure Judgment is absurd.[5]

Likewise, Plaintiff's contention that her claims "do not invite this Court's review and rejection of the underlying foreclosure judgment" fails for the same reasons. This Court simply cannot determine the merits of Plaintiff's claims without reviewing the validity of the pre-judgment interest calculations contained in the Foreclosure Judgment. Further, Plaintiff's reliance on various cases which allege "fraud occurred during a foreclosure proceeding" are misplaced and distinguishable.[6] Plaintiff cannot avoid the application of the *Rooker-Feldman* doctrine by simply

---

[5] Plaintiff's reliance on the decision in *Sykes v. Mel S. Harris and Associates, LLC* is misplaced. *See ECF 39, p. 13.* As an initial matter, the decision in *Sykes* examined whether plaintiff's claims and defenses were capable of class treatment and did not resolve the viability of such claims or defenses. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94-95 (2d Cir. 2015). Moreover, the claims in *Sykes* were based on defendants' construction of a "default judgment mill" through which the defendants' first "obtain[ed] charged off-consumer debt, initiat[ed] a debt collection and effectuating these actions through "sewer service"[5] and submitting fraudulent documents to obtain default judgments. *Id.*, at 75. In determining whether the *Rooker-Feldman* doctrine was a bar to class certification, the Court explained that the claims sounding under "the FDCPA, RICO, and state law speak not to the propriety of the state court judgment." *Id*. These claims are drastically different than Plaintiff's claims which arise directly from the Foreclosure Judgment.

[6] *Limtung v. Thomas*, 2021 WL 4443710 (E.D.N.Y. Sept. 28, 2021)(*Rooker-Feldman* did not apply when plaintiff "alleges extensive misconduct other than procuring a wrongful judgment and does not expressly link his damages request to the property's asserted value."); *Babb v. Capitalsource, Inc.,* 588 F. App'x 66, 68 (2d Cir. 2015)(*Rooker–Feldman* did not apply because plaintiff sought

4

recasting her claims as something they are not and ignoring the plain language of the Foreclosure Judgment. As such, the *Rooker-Feldman* doctrine bars Plaintiff's claims in their entirety.

### C. Plaintiff's Claims Are Barred By Judicial Estoppel

Plaintiff's Opposition claims judicial estoppel does not apply because her "decision not to contest the foreclosure" and simply accept judgment does not preclude her from challenging the methods used to allegedly inflate the judgment. *ECF 39, p. 21.* Yet, this is precisely the type of inconsistencies judicial estoppel was designed to prevent.

The Foreclosure Judgment did not just adjudicate the underlying mortgage default, but expressly set the amounts due to BNY, including the pre-judgment interest calculations during the Motion Determination Period. Plaintiff's Amended Complaint makes this very point claiming "the amount due and owing on a mortgage is not finally determined until a court enters a [Foreclosure Judgment]." *ECF 33, ¶67.* In entering the Foreclosure Judgment, the Court found that Plaintiff did not contest the Referee's calculations that were incorporated into the Foreclosure Judgment. *ECF*

---

"damages for injuries suffered as a result of defendants' alleged fraud and does not attempt to reverse or undo a state court judgment."); *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022)("the Attorney Defendants for fraud in the procurement of the state court foreclosure judgment can be considered independently of the merits of that foreclosure judgment."); *Worthy-Pugh*, 664 F.App'x 20, 21 (2d Cir. 2016)(same); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014)(same); *Gabriele v. American Home Mortg. Servicing, Inc.*, 503 Fed.Appx. 89, 92 (2d Cir. 2012)(holding *Rooker-Feldman* does not bar the plaintiff's claims because the plaintiff "does not complain of injuries *caused* by the state court judgment." (emphasis in original)); *Lindow v. Argent Mortg. Co., LLC*, 23-CV-8860(AMD)(JAM), 2024 WL 4665181, at *6; 7 (E.D.N.Y. Nov. 4, 2024)(*Rooker-Feldman* requirements are not met when "a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries."); *Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK)(MMH), 2023 WL 2707098, at *6 (E.D.N.Y. Mar. 30, 2023) (*Rooker-Feldman* does not bar "Plaintiff's claims for constitutional violations and his request for damages related to the mental anguish caused by Defendants' alleged fraudulent conduct."); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 687-88 (S.D.N.Y. 2019) (same*)* (internal citations omitted)); *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *1 (S.D.N.Y. Aug. 22, 2016)(same).

*37-15*. Plaintiff subsequently sought to confirm the Referee's Report of Sale, which again included the pre-judgment interest calculation, along with the surplus balance calculation. *ECF 37-18*. Plaintiff resolved her dispute regarding the surplus funds with another claimant and requested yet again, that the Court confirm the Referee's Report of Sale and the disbursement of the proceeds. *ECF 37-23*. The Court did just as Plaintiff requested, confirming the Referee's Report of Sale and ultimately ordering the surplus funds be disbursed. *ECF 37-24*. Plaintiff's positions confirming the Referee's calculations are undoubtedly inconsistent with her claims in this Action, that she was deprived of "surplus foreclosure proceeds." *ECF 39, p. 15*. Plaintiff cannot square these impossibly inconsistent positions and her refusal to address these facts only confirms her claims must be judicially estopped from proceeding.

## II.     PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's Opposition does little to meaningfully address Defendants' contention that her claims are time barred.[7] Instead, Plaintiff argues "the doctrines of fraudulent concealment and equitable tolling" can save her time-barred claims. *ECF 39, p. 22*. Neither of these doctrines can salvage Plaintiff's claims from dismissal.

For equitable tolling on the basis of fraudulent concealment to apply, *the defendant* must conceal information from the plaintiff. *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4d 124, 243 (2d Cir. 2025) (emphasis added). Plaintiff argues that her claims are subject to equitable tolling because the "fraudulent miscalculation is not visible to the plaintiff-borrower, the court nor subordinate lienholders at the time the [Foreclosure Judgment] is granted," claiming it becomes

---

[7] For example, even if Plaintiff's claims accrued at the time the Referee's Report of Sale was finalized, Plaintiff seemingly concedes the causes of action, other than her claims under §487, have expired. *ECF 39, p. 21-22*. Notwithstanding, Plaintiff's claims regarding the accrual remain misplaced because the interest calculation during the Motion Determination Period at issue was expressly included in the Foreclosure Judgment and the Referee had no ability to modify it as part of any subsequent sale.

6

"discoverable" only after the foreclosure auction has occurred. *ECF 39, p. 23-25*. This contention is contradicted by the Foreclosure Judgment itself which **expressly** identifies and orders pre-judgment interest on the amount of $851,979.30 during the Motion Determination Period. *See ECF 37-16, p.8-9 (Foreclosure Judgment)*. Simply put, the allegedly "fraudulent miscalculation" could not be "fraudulently concealed" when it was ordered on the face of the Foreclosure Judgment.[8] Plaintiff's Opposition fails to explain how this calculation was "concealed," and instead resorts to generic labels regarding some alleged lack of visibility. *ECF 39, p. 24.* To the extent Plaintiff is claiming she did not discover the alleged "unlawful calculations" until she retained her current counsel in 2025, tolling does not apply. *See Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 418-19 (D.D.C. 2011)(tolling does not apply to a plaintiff who lacks knowledge of the law). Thus, Plaintiff's conclusory claims of equitable tolling and fraudulent concealment cannot save her otherwise time-barred claims from dismissal. *De Sole v. Knoedler Gallery, LLC*, 974 F.Supp.2d 274, 319 (S.D.N.Y. 2013) citing *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).

### III. PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION FAIL

#### A. Plaintiff Fails to Address the Defects of Her FDCPA Claim

Plaintiff failed to address BNY and Shellpoint's argument that they are not subject to the FDCPA because neither is a "debt collector" within the meaning of the FDCPA. As a result, Plaintiff effectively abandons her FDCPA claim against BNY and Shellpoint and this claim should

---

[8] The cases relied upon by Plaintiff are easily distinguishable as this is not a case that arises from the submission of a fraudulent factual affidavit. Rather, the only submission Plaintiff appears to identify is Shapiro's submission of the proposed order that expressly included the calculation of pre-judgment interest. These facts are drastically different than the various cases where allegedly fraudulent factual affidavits were submitted as part of a larger fraudulent scheme. *See Toohey*, 2016 WL 4473016, at *2 (the defendant would file an affidavit sworn to by one of its employees in which the employee asserted personal knowledge of the claimed debt and amount (*i.e.*, an affidavit of merit).

7

be dismissed. *Randall v. Dish Network, LLC*, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (collecting cases).

### B. Plaintiff's Prima Facie Tort Claim Cannot Stand

Plaintiff acknowledges the general rule that a prima facie tort requires "disinterested malevolence" but pleads that the case falls within an exception for "systematic schemes targeting vulnerable populations." *ECF 39, p. 38.* The *NYC Transit Auth.* decision relied upon by Plaintiff does not, however, address prima facie tort claims or reference an exception to the disinterested malevolence requirement. *NYC Transit Auth.v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (1st Dept. 2000). Further, no New York court has found such an exception exists. Accordingly, dismissal of Plaintiff's prima facie tort claim is warranted.

### C. Plaintiff Fails to State a Claim for Violation of N.Y. Gen. Bus. Law § 349

Plaintiff's Opposition simply misses the basis upon which BNY and Shellpoint move to dismiss her § 349 claim. Aside from lumping all of the Defendants into an indistinguishable group, Plaintiff has not identified the "deceptive acts" by BNY and/or Shellpoint that serve as the basis of her § 349 claim. Her general allegations regarding their respective roles in the foreclosure process are wholly insufficient to state a plausible § 349 claim. Further, Plaintiff ignores the case law cited by Defendants, which holds that § 349 claims cannot stand where, as here, the allegedly deceptive or fraudulent charges were disclosed prior to payment. *See ECF 36-1, p. 35-36.* These arguments were never addressed in Plaintiff's Opposition. For these reasons, Plaintiffs' § 349 claims against BNY and Shellpoint fail as a matter of law.

### D. Plaintiff Fails to State a Conversion Claim

Plaintiff fails to meaningfully address the fundamental flaws of her conversion claim. As set forth in its Moving Brief, Plaintiff's conversion claim fails because she has not and cannot allege the funds are "specifically identifiable," which cannot occur where funds were co-mingled

8

with other funds. *ECF 36-1, p. 26-27*. Plaintiff does nothing to address her inability to allege any "specifically identifiable" funds, and her conversion claim must be dismissed.

   **E.**  **Plaintiff Ignores the Fatal Flaws of her Unjust Enrichment Claim.**

  Plaintiff's Opposition ignores the pleadings defects that served as the basis of BNY's Motion to Dismiss. For example, Plaintiff fails to address the decisions which preclude unjust enrichment claims where, as here, they seek to attack a judgment obtained in an earlier proceeding. *ECF 36-1, pg. 23.* Plaintiff likewise ignores BNY's arguments that her unjust enrichment claim simply duplicates her fraud-based claims and is not designed as a "catchall" cause of action**.** *ECF 36-1, p. 23-24*. Instead, Plaintiff contends that her unjust enrichment claim is not precluded by the existence of the "the Subject Mortgage." *ECF 39, p. 37-38*. This was not the basis of BNY's Motion to dismiss this claim and Plaintiff's inability or refusal to address the actual arguments raised by BNY should lead to dismissal of this claim.

   **F.**  **Plaintiff's RICO Claim Cannot Survive**

  Plaintiff fails to plead RICO claims against BNY or Shellpoint. First, Plaintiff's Amended fails to identify what each Defendant did to specifically advance the RICO scheme. Plaintiff's Opposition only generally points to the Amended Complaint, promising the requisite detail is provided. In reality, the Amended Complaint is devoid of the requisite specific allegations,

  Second, Plaintiff has not alleged any RICO "enterprise." As detailed in Defendants' Moving Brief, a corporate entity cannot be both the person conducting a RICO enterprise and the enterprise itself. *See China Trust Bank of New York v. Standard Chartered Bank*, *PLC*, 981 F. Supp. 282, 286 (S.D.N.Y. 1997). Plaintiff cannot circumvent the distinctiveness requirement "by alleging a conspiracy between the defendant and its own employees or agents carrying on the regular affairs of the defendant." *Id.*Here, Plaintiff has done just that, alleging that the enterprise is comprised of BNY, a law firm appearing on its behalf, and the servicer also acting on its behalf.

9

Thus, the alleged participants in the scheme form just one entity, which cannot constitute an enterprise for purposes of a RICO claim. Plaintiff's Opposition does not address this argument.

Third, the litigation activities identified by Plaintiff cannot constitute predicate acts under RICO because the acts were not undertaken by these Defendants, and because litigation activities are not predicate acts under RICO. Plaintiff utterly ignores that the litigation activities she identified in her RICO claim were not conducted by BNY or Shellpoint. Instead, she attempts to avoid the implications of the cited case law. In opposition, Plaintiff argues that her RICO claim alleges "a far more intricate web of conduct which involves in and out of court activity" than was at issue in the *Kim v. Kimm* matter. *ECF 39, p. 31*. This "web" is not articulated anywhere in the Amended Complaint. Even as referenced in her Opposition, the "web" is nothing more than run-of-the-mill filings in a typical foreclosure case. Case law in the SDNY and the Second Circuit is clear that such litigation activities are not predicate acts under RICO.

Fourth, Plaintiff failed to plead injuries cognizable under RICO that were proximately caused by alleged racketeering activities. Without a direct connection between the alleged predicate acts and her injuries, Plaintiff lacks standing to bring a RICO claim. In an apparent concession, Plaintiff's Opposition is silent on this point. Last, Plaintiff's Opposition also fails to address the arguments made outlining how her RICO conspiracy claim under §1962(d) is flawed and must be dismissed. Plaintiff has not pled any RICO claims that can be maintained against BNY or Shellpoint.

## **CONCLUSION**

For all of the reasons detailed herein, and as set forth in their Moving Brief, BNY and Shellpoint respectfully request that all of Plaintiff's claims be dismissed with prejudice.

Dated: October 6, 2025　　　　　　　　　　**HUSCH BLACKWELL LLP**

　　　　　　　　　　　　　　　　　　　　*s/ Ryan L. DiClemente*
　　　　　　　　　　　　　　　　　　　　Ryan L. DiClemente
　　　　　　　　　　　　　　　　　　　　1801 Pennsylvania Ave. NW, Suite 1000
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006-3606
　　　　　　　　　　　　　　　　　　　　Tel: 202-378-5794
　　　　　　　　　　　　　　　　　　　　Fax: 202-378-2319
　　　　　　　　　　　　　　　　　　　　Ryan.DiClemente@huschblackwell.com
　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-24, improperly named The Bank of New York and Newrez LLC dba Shellpoint Mortgage Servicing improperly named New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing and Defendant*

11